**TEXAS EASTERN TRANSMISSION CORPORATION, Plaintiff,**

v.

**R. L. BARNARD, T. T. Barnard and Lenora Barnard, Dillard R. Douglas and Wingate E. Douglas, Billy Perry Patterson, Lorena Perry Patterson, and Shirley Patterson, W. C. Clay and Jimmy P. Evans, Defendants.**

**No. 1313.**

United States District Court
E. D. Kentucky, Lexington.
Sept. 29, 1959.

Boehl, Stopher, Graves & Deindoerfer, Louisville, Ky., Henry H. Bramblet, Mt. Sterling, Ky., for plaintiff.

Clay & Edwards, Mt. Sterling, Ky., for defendants.

HIRAM CHURCH FORD, Chief Judge.

This action arises under the United States Arbitration Act, Title 9 U.S.C.A. §§ 1 through 14. The case is submitted for judgment in chief upon issues disclosed by the pleadings, affidavits and exhibits filed, constituting the record herein.

Defendants are the owners of certain tracts of land in Bath and Montgomery counties, Kentucky, across which the plaintiff, Texas Eastern Transmission Corporation, in May, 1957, obtained easements under authority of the Natural

Gas Act, Title 15 U.S.C.A. § 717 for the purpose of laying pipelines for transmission of natural gas in interstate commerce.

The easement agreements between the plaintiff and the defendants contain the following provisions:

"In the construction, maintenance and operation of any pipeline or appurtenance hereunder, the Grantee shall:

\* \* \* \* \* \*

"(3) Repair all damages, or reimburse the Grantor for all damages, resulting from the construction, maintenance and operation of said lines and appurtenances. Without limiting in any way the scope of this obligation, but solely for the purpose of agreeing upon certain foreseeable elements of damage, it is mutually agreed:

\* \* \* \* \* \*

"(d) If at any time any dispute, disagreement or difference shall arise between the Grantor and the Grantee concerning the construction of this contract and easement, or concerning the amount of any damage payable by the Grantee to the Grantor, or concerning any other matter or thing whatsoever, then such dispute, disagreement or difference shall be determined by arbitration. Each of the parties shall have the right to appoint one arbitrator and the two arbitrators thus selected shall designate a third arbitrator. The decision in writing of any two of the arbitrators thus selected shall be binding upon the parties. *If either party shall demand arbitration and the other party shall fail and refuse to designate an arbitrator within thirty (30) days after written request therefor, then the arbitrator designated by the party requesting arbitration shall have the right to proceed independently to make a determination as authorized by this provision.*" (Italics added).

Texas Eastern Transmission Corporation instituted the present action on September 16, 1958, and by its original Complaint herein sought (1) to have set aside and held invalid an ex parte arbitration hearing scheduled for that same day by Edward O. Crooks, arbitrator selected by defendants, (2) that defendants be restrained from proceeding with any hearing concerning arbitration until both plaintiff and defendants named arbitrators in accordance with the terms of the agreement existing between the parties, and (3) that the appointment of Crooks be set aside on the ground of bias and prejudice.

On October 14, 1958, Texas Eastern Transmission Corporation filed herein its Amended and Supplemental Complaint stating "That on September 16, 1958 E. O. Crooks, of Mt. Sterling, Kentucky, purporting to act as arbitrator designated by defendants, as set forth in the original Complaint, held a hearing in Mt. Sterling, Kentucky, relative to the claims and controversies between the defendants and plaintiff, and that he undertook to make findings and enter orders in the matter of each of said claims." Incorporated by reference in the Amended and Supplemental Complaint are copies of the Findings and Order of the arbitrator with respect to each claim. He awarded $29,682.84 on the claim of the defendants R. L. Barnard, T. T. Barnard and Lenora Barnard; $10,090.35 on the claim of the defendants Dillard R. Douglas and Wingate E. Douglas; $10,579.63 on the claim of the defendants Billy Perry Patterson, Lorena Perry Patterson and Shirley Patterson; $19,933.82 on the claim the defendant W. C. Clay, and $10,986.99 on the claim the defendant Jimmy P. Evans, with six per cent interest on each claim from September 16, 1958 until paid. The relief sought in the Amended and Supplemental Complaint is to have "Said purported findings, orders and awards \* \* \* and each of them \* \* \* vacated, because there was evident partiality on the part of said purported arbitrator, E. O. Crooks," be-

cause "said purported arbitrator was guilty of misconduct in refusing to permit plaintiff to appoint an arbitrator and in failing to notify plaintiff of the said hearing of September 16, 1958 in time to permit adequate preparation and in failing and refusing to permit or conduct arbitration in accordance with the terms of the agreement between the parties, * * *." Texas Eastern Transmission Corporation also demanded in its Amended and Supplemental Complaint that "the Court enter an order directing that arbitration shall proceed in the manner as provided in the agreements executed between plaintiff and defendants herein * * *."

By their amended Answer and Counterclaim defendants allege that the plaintiff owes them the sums evidenced by the awards of the arbitrator and seek judgment against the plaintiff accordingly.

The opinion of the arbitrator with respect to each claim contains the following recitation of facts. In the opinion the defendants herein are referred to as plaintiffs and Texas Eastern Transmission Corporation is denominated defendant. We quote.

"Came the plaintiffs, * * * by their counsel, Clay and Edwards, and filed with the Arbitrator (1) a contract between the plaintiffs and defendant, Texas Eastern Transmission Corporation, dated May 8, 1957, (2) a demand for arbitration made upon the defendant by the plaintiffs by letter dated August 7, 1958 (together with post office receipt showing delivery thereof to the defendant on August 9, 1958), and (3) a letter dated September 5, 1958, signed by the plaintiffs appointing Edward O. Crooks as Arbitrator of the controversy between the plaintiffs and the defendant concerning damages sustained by the plaintiffs in the construction of a pipe line by the defendant.

"Thereupon, by letter dated and mailed September 9, 1958, the Arbitrator notified the plaintiffs and the defendant that on Tuesday, September 16, 1958, at 2:00 P.M., in the Director's Room of the Montgomery National Bank in Mt. Sterling, Kentucky, the Arbitrator would hear all testimony offered by either party relative to the controversy.

"Whereupon, this action coming on for a hearing before the Arbitrator on September 16, 1958, there came the defendant, Texas Eastern Transmission Corporation, by its counsel, Henry H. Bramblet, and objected to the conduct on the hearing upon the grounds: (1) that the plaintiffs in giving notice of arbitration failed to name the Arbitrator appointed by the plaintiffs, (2) that the Arbitrator failed to notify the defendant of this hearing in time to permit adequate preparation, (3) that the plaintiffs refused to permit the defendant to appoint an Arbitrator, and (4) that the Arbitrator designated by the plaintiffs 'cannot serve without bias or prejudice.' Thereupon, counsel for the plaintiffs inquired as to whether or not the defendant desired to make a motion for a continuance, and the defendant by counsel announced that the defendant did not care to make any further statement or motion.

"Whereupon, the plaintiffs filed their contract with the defendant, their claim for damages, and their demand for arbitration, and then introduced various witnesses who, after being duly sworn, testified in support of the plaintiffs' claim for damages. The defendant declined to introduce any evidence.

"Now, therefore, upon the law and the evidence, the Arbitrator finds:

"(1) That the contract between the plaintiffs and the defendant provides that: 'If either party shall demand arbitration and the other party shall fail and refuse to designate an arbitrator within thirty (30) days after written request therefor, then the arbitrator designated by the party requesting arbitration

shall have the right to proceed independently to make a determination as authorized by this provision.' In accordance therewith the plaintiffs (1) demanded arbitration on August 7, 1958, and (2) appointed an Arbitrator on September 5, 1958. The plaintiffs were not required by the easement to designate their Arbitrator in their demand for arbitration, but only the party receiving a demand for arbitration was required to so designate its Arbitrator and to do so within thirty (30) days.

"(2) That the defendant did not by affidavit, sworn testimony, or otherwise, offer any evidence in support of its allegation that it had an insufficient time to prepare for this hearing, and that the defendant did not request a continuance to enable the defendant to prepare its defense although upon any reasonable showing of cause such a continuance would have been granted.

"(3) That the defendant failed to designate its Arbitrator within thirty (30) days of the demand made upon it to designate an Arbitrator and that thereupon the defendant was not thereafter entitled to designate an Arbitrator."

By affidavit filed with the original Complaint herein on September 16, 1958, Joseph E. Stopher, counsel for Texas Eastern Transmission Corporation, states that the notice of August 7, 1958 requesting arbitration was not received by Texas Eastern at its office in Shreveport, Louisiana until August 11, 1958. The arbitrator found that the notice had been received there on August 9, 1958. Also, by affidavit filed September 16, 1958, Henry H. Bramblet, counsel for Texas Eastern Transmission Corporation, states that he was first advised on September 12, 1958, that notice had been received in Shreveport, Louisiana of the hearing to be conducted by E. O. Crooks at Mt. Sterling, Kentucky on September 16, 1958. He further states that he wrote a letter to William C. Clay, Jr., attorney for defendants, in which he designated an arbitrator to act on behalf of Texas Eastern Transmission Corporation, and that by letter in reply Clay refused to permit anyone to be named or to serve as arbitrator on behalf of Texas Eastern Transmission Corporation. These affidavits do not contradict, but rather make evident the correctness of the arbitrator's finding that Texas Eastern Transmission Corporation failed to name its arbitrator within thirty days following demand for arbitration by the defendants.

Bearing upon the allegation in the original Complaint that the appointment of Crooks as arbitrator for defendants should be set aside on the ground of bias and prejudice, the affidavit of Bramblet continues as follows:

"Affiant further states that the arbitrator allegedly appointed by defendants is an officer and employee of the Montgomery National Bank of Mt. Sterling, Kentucky, of which bank the law firm of which William C. Clay, Jr., is a member serves as general counsel, and further that said William C. Clay, Jr., is a stockholder in said bank and that the law firm of which said William C. Clay, Jr., is a member is legal counsel for the president of said bank and at least six of the seven present directors thereof."

The allegation in the Amended and Supplemental Complaint to the effect that the awards of the arbitrator should be vacated because of "evident partiality" on the part of Crooks as arbitrator is supported only by the above affidavit and the facts as hereinabove recited.

### Conclusions of Law

The easement agreements here involved are contracts "evidencing a transaction involving commerce" within the meaning of Title 9 U.S.C.A. §§ 1 and 2. The agreements were entered into by Texas Eastern Transmission Corporation, as alleged in its original Complaint and not denied, under authority of Title 15 U.S.C.A. § 717, apparently in lieu of eminent domain proceedings. The con-

struction of new pipelines under such agreements, out of which construction the claims for damages of defendants arose, involved commerce. Mitchell v. C. W. Vollmer & Co., 349 U.S. 427, 75 S.Ct. 860, 99 L.Ed. 1196; Southern Pacific Co. v. Gileo, 351 U.S. 493, 76 S.Ct. 952, 100 L.Ed. 1357; Mitchell v. Empire Gas Engineering Co., 5 Cir., 256 F.2d 781, 784. The agreements in question are therefore "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Title 9 U.S.C.A. § 2.

Title 9 U.S.C.A. § 4 provides:

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement * * *."

Title 9 U.S.C.A. § 10 provides:

"In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

"(a) Where the award was procured by corruption, fraud, or undue means.

"(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

"(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

"(d) Where the arbitrators exceeded their powers, or so imperfect-

ly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

"(e) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators."

 It seems obvious that the plaintiff, Texas Eastern Transmission Corporation, being itself in default by its failure to appoint an arbitrator within thirty days after demand therefor by defendants, is not a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" within the meaning of Title 9 U.S.C.A. § 4, supra. Moreover, the remedy afforded by this section is permissive, Kentucky River Mills v. Jackson, 6 Cir., 206 F.2d 111, 118, 47 A.L.R.2d 1331, certiorari denied 346 U.S. 887, 74 S.Ct. 144, 98 L.Ed. 392 and there is no occasion for application of the section where, as here, the agreements permit the arbitration to proceed ex parte. Standard Magnesium Corporation v. Fuchs, 10 Cir., 251 F.2d 455, 458. The relief sought by plaintiff in its Amended and Supplemental Complaint in the nature of an order directing that arbitration proceed in the manner provided for in the agreements should be denied.

The record does not seem to present a case warranting the granting of relief to plaintiff in equity, or at law under any of the subsections of Title 9 U.S.C.A. § 10, supra.

 The mere fact that counsel for defendants is also counsel for a bank of which the arbitrator is an officer and employee does not establish "evident partiality" on the part of the arbitrator within the meaning of subsection (b). Something more than such a vague and rather remote business relationship is needed if the losing party seeks to vacate an award on the ground of evident partiality. Arbitration: Ilios Shipping & Trading Corp. and American Anthracite & Bituminous Coal Corp., D.C., 148 F.

Supp. 698, 700, affirmed 2 Cir., 245 F.2d 873. Apropos of this situation is the statement of the court in Kentucky River Mills v. Jackson, supra, 206 F.2d at page 117, as follows:

" * * * and it is argued that an ex parte arbitration is contrary to the ordinary concepts of fairness. It is to be said that an arbitration by an arbitrator appointed by one of the parties only may well result in a degree of advantage to the other party, for mere personal friendship with one of the parties does not disqualify an arbitrator, and an arbitration carried on by such an arbitrator would not be contrary to ordinary concepts of fairness, although one would hardly be considered vigilant of his interests if he failed to appoint an arbitrator himself when he was entitled to do so. But it is the proof of bias or unfairness or partiality on the part of an arbitrator that results in unjust advantage, and calls for the setting aside of the award."

Here there is absolutely no proof of partiality. Contrary to the contention of counsel for plaintiff in their brief, the size of the awards cannot be taken as proof of partiality in view of the fact that there is no proof in the record impeaching the reasonableness of such awards.

It can hardly be argued that the arbitrator was guilty of any misconduct within the meaning of subsection (c), since counsel for plaintiff appeared at the hearing and refused to make a motion for a continuance or to participate in the hearing. Under such circumstances the claim of the plaintiff that the arbitrator failed to notify it of the hearing in time to permit adequate preparation sounds rather hollow.

The contention that the arbitrator was guilty of misconduct in refusing to permit plaintiff to appoint an arbitrator might be construed as a claim that the arbitrator exceeded his powers within the meaning of subsection (d). Defendants were not required by the easement agreements to name their arbitrator in the original demand for arbitration and plaintiff, having failed to designate its arbitrator within thirty days of such demand, was not thereafter entitled to designate an arbitrator.

The record does not indicate that the awards were procured by any undue means within the meaning of subsection (a).

Judgment should be entered for defendants in the respective amounts awarded them by the arbitrator. Counsel for defendants will serve and submit for entry judgment in conformity herewith.