COMMONWEALTH COATINGS CORP. *v.* CONTINENTAL CASUALTY CO. ET AL.

No. 14. Argued October 22, 1968.—Decided November 18, 1968.

*Emanuel Harris* argued the cause for petitioner. With him on the briefs was *Max E. Greenberg.*

*Overton A. Currie* argued the cause for respondents. With him on the briefs were *Luther P. House, Jr., Federico Ramirez Ros,* and *Edward H. Wasson, Jr.*

MR. JUSTICE BLACK delivered the opinion of the Court.

At issue in this case is the question whether elementary requirements of impartiality taken for granted in every judicial proceeding are suspended when the parties agree to resolve a dispute through arbitration.

The petitioner, Commonwealth Coatings Corporation, a subcontractor, sued the sureties on the prime contractor's bond to recover money alleged to be due for a painting job. The contract for painting contained an agreement to arbitrate such controversies. Pursuant to this agreement petitioner appointed one arbitrator, the prime contractor appointed a second, and these two together selected the third arbitrator. This third arbitrator, the supposedly neutral member of the panel, conducted a large business in Puerto Rico, in which he served as an engineering consultant for various people in connection with building construction projects. One of his regular customers in this business was the prime contractor that petitioner sued in this case. This relationship with the prime contractor was in a sense sporadic in that the arbitrator's services were used only from time to time at irregular intervals, and there had been no dealings between them for about a year immediately preceding the arbitration. Nevertheless, the prime contractor's patronage was repeated and significant, involving fees of about $12,000 over a period of four or five years, and the relationship even went so far as to include the rendering of services on the very projects involved in this lawsuit. An arbitration was held, but the facts concerning the close business connections between the third arbitrator and the prime contractor were unknown to petitioner and were never revealed to it by this arbitrator, by the prime contractor, or by anyone else until after an award had been made. Petitioner challenged the award on this ground, among others, but the District Court refused to set aside the award. The Court of Appeals affirmed, 382 F. 2d 1010 (C. A. 1st Cir. 1967), and we granted certiorari, 390 U. S. 979 (1968).

In 1925 Congress enacted the United States Arbitration Act, 9 U. S. C. §§ 1–14, which sets out a comprehen-

sive plan for arbitration of controversies coming under its terms, and both sides here assume that this Federal Act governs this case. Section 10, quoted below, sets out the conditions upon which awards can be vacated.[1] The two courts below held, however, that § 10 could not be construed in such a way as to justify vacating the award in this case. We disagree and reverse. Section 10 does authorize vacation of an award where it was "procured by corruption, fraud, or undue means" or "[w]here there was evident partiality . . . in the arbitrators." These provisions show a desire of Congress to provide not merely for *any* arbitration but for an impartial one. It is true that petitioner does not charge before us that the third arbitrator was actually guilty of fraud or bias in deciding this case, and we have no reason, apart from the undisclosed business relationship, to suspect him of any improper motives. But neither this arbitrator nor the prime contractor gave to petitioner even an

---

[1] "In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

"(a) Where the award was procured by corruption, fraud, or undue means.

"(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

"(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

"(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

"(e) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators."

intimation of the close financial relations that had existed between them for a period of years. We have no doubt that if a litigant could show that a foreman of a jury or a judge in a court of justice had, unknown to the litigant, any such relationship, the judgment would be subject to challenge. This is shown beyond doubt by *Tumey* v. *Ohio,* 273 U. S. 510 (1927), where this Court held that a conviction could not stand because a small part of the judge's income consisted of court fees collected from convicted defendants. Although in *Tumey* it appeared the amount of the judge's compensation actually depended on whether he decided for one side or the other, that is too small a distinction to allow this manifest violation of the strict morality and fairness Congress would have expected on the part of the arbitrator and the other party in this case. Nor should it be at all relevant, as the Court of Appeals apparently thought it was here, that "[t]he payments received were a very small part of [the arbitrator's] income . . . ." [2] For in *Tumey* the Court held that a decision should be set aside where there is "the slightest pecuniary interest" on the part of the judge, and specifically rejected the State's contention that the compensation involved there was "so small that it is not to be regarded as likely to influence improperly a judicial officer in the discharge of his duty . . . ." [3] Since in the case of courts this is a *constitutional* principle, we can see no basis for refusing to find the same concept in the broad statutory language that governs arbitration proceedings and provides that an award can be set aside on the basis of "evident partiality" or the use of "undue means." See also *Rogers* v. *Schering Corp.,* 165 F. Supp. 295, 301 (D. C. N. J. 1958). It is true that arbitrators cannot sever all their ties with the business world, since

---

[2] 382 F. 2d, at 1011.

[3] 273 U. S., at 524.

they are not expected to get all their income from their work deciding cases, but we should, if anything, be even more scrupulous to safeguard the impartiality of arbitrators than judges, since the former have completely free rein to decide the law as well as the facts and are not subject to appellate review. We can perceive no way in which the effectiveness of the arbitration process will be hampered by the simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias.

While not controlling in this case, § 18 of the Rules of the American Arbitration Association, in effect at the time of this arbitration, is highly significant. It provided as follows:

> "Section 18. Disclosure by Arbitrator of Disqualification—At the time of receiving his notice of appointment, the prospective Arbitrator is requested to disclose any circumstances likely to create a presumption of bias or which he believes might disqualify him as an impartial Arbitrator. Upon receipt of such information, the Tribunal Clerk shall immediately disclose it to the parties, who if willing to proceed under the circumstances disclosed, shall, in writing, so advise the Tribunal Clerk. If either party declines to waive the presumptive disqualification, the vacancy thus created shall be filled in accordance with the applicable provisions of this Rule."

And based on the same principle as this Arbitration Association rule is that part of the 33d Canon of Judicial Ethics which provides:

> "33. Social Relations.
>
> ". . . [A judge] should, however, in pending or prospective litigation before him be particularly

careful to avoid such action as may reasonably tend to awaken the suspicion that his social or business relations or friendships, constitute an element in influencing his judicial conduct."

This rule of arbitration and this canon of judicial ethics rest on the premise that any tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias. We cannot believe that it was the purpose of Congress to authorize litigants to submit their cases and controversies to arbitration boards that might reasonably be thought biased against one litigant and favorable to another.

*Reversed.*

MR. JUSTICE WHITE, with whom MR. JUSTICE MARSHALL joins, concurring.

While I am glad to join my Brother BLACK's opinion in this case, I desire to make these additional remarks. The Court does not decide today that arbitrators are to be held to the standards of judicial decorum of Article III judges, or indeed of any judges. It is often because they are men of affairs, not apart from but of the marketplace, that they are effective in their adjudicatory function. Cf. *United Steelworkers* v. *Warrior & Gulf Navigation Co.,* 363 U. S. 574 (1960). This does not mean the judiciary must overlook outright chicanery in giving effect to their awards; that would be an abdication of our responsibility. But it does mean that arbitrators are not automatically disqualified by a business relationship with the parties before them if both parties are informed of the relationship in advance, or if they are unaware of the facts but the relationship is trivial. I see no reason automatically to disqualify the best informed and most capable potential arbitrators.

The arbitration process functions best when an amicable and trusting atmosphere is preserved and there is voluntary compliance with the decree, without need for judicial enforcement. This end is best served by establishing an atmosphere of frankness at the outset, through disclosure by the arbitrator of any financial transactions which he has had or is negotiating with either of the parties. In many cases the arbitrator might believe the business relationship to be so insubstantial that to make a point of revealing it would suggest he is indeed easily swayed, and perhaps a partisan of that party.* But if the law requires the disclosure, no such imputation can arise. And it is far better that the relationship be disclosed at the outset, when the parties are free to reject the arbitrator or accept him with knowledge of the relationship and continuing faith in his objectivity, than to have the relationship come to light after the arbitration, when a suspicious or disgruntled party can seize on it as a pretext for invalidating the award. The judiciary should minimize its role in arbitration as judge of the arbitrator's impartiality. That role is best consigned to the parties, who are the architects of their own arbitration process, and are far better informed of the prevailing ethical standards and reputations within their business.

Of course, an arbitrator's business relationships may be diverse indeed, involving more or less remote commercial connections with great numbers of people. He cannot be expected to provide the parties with his complete and unexpurgated business biography. But it is enough for present purposes to hold, as the Court does, that where the arbitrator has a substantial interest in a firm

---

*In fact, the District Court found—on the basis of the record and petitioner's admissions—that the arbitrator in this case was entirely fair and impartial. I do not read the majority opinion as questioning this finding in any way.

which has done more than trivial business with a party, that fact must be disclosed. If arbitrators err on the side of disclosure, as they should, it will not be difficult for courts to identify those undisclosed relationships which are too insubstantial to warrant vacating an award.

MR. JUSTICE FORTAS, with whom MR. JUSTICE HARLAN and MR. JUSTICE STEWART join, dissenting.

I dissent and would affirm the judgment.

The facts in this case do not lend themselves to the Court's ruling. The Court sets aside the arbitration award despite the fact that the award is unanimous and no claim is made of actual partiality, unfairness, bias, or fraud.

The arbitration was held pursuant to provisions in the contracts between the parties. It is not subject to the rules of the American Arbitration Association. It is governed by the United States Arbitration Act, 9 U. S. C. §§ 1–14.

Each party appointed an arbitrator and the third arbitrator was chosen by those two. The controversy relates to the third arbitrator.

The third arbitrator was not asked about business connections with either party. Petitioner's complaint is that he failed to volunteer information about professional services rendered by him to the other party to the contract, the most recent of which were performed over a year before the arbitration. Both courts below held, and petitioner concedes, that the third arbitrator was innocent of any actual partiality, or bias, or improper motive. There is no suggestion of concealment as distinguished from the innocent failure to volunteer information.

The third arbitrator is a leading and respected consulting engineer who has performed services for "most

of the contractors in Puerto Rico." He was well known to petitioner's counsel and they were personal friends. Petitioner's counsel candidly admitted that if he had been told about the arbitrator's prior relationship "I don't think I would have objected because I know Mr. Capacete [the arbitrator]."

Clearly, the District Judge's conclusion, affirmed by the Court of Appeals for the First Circuit, was correct, that "the arbitrators conducted fair, impartial hearings; that they reached a proper determination of the issues before them, and that plaintiff's objections represent a 'situation where the losing party to an arbitration is now clutching at straws in an attempt to avoid the results of the arbitration to which it became a party.'"

The Court nevertheless orders that the arbitration award be set aside. It uses this singularly inappropriate case to announce a *per se* rule that in my judgment has no basis in the applicable statute or jurisprudential principles: that, regardless of the agreement between the parties, if an arbitrator has any prior business relationship with one of the parties of which he fails to inform the other party, however innocently, the arbitration award is always subject to being set aside. This is so even where the award is unanimous; where there is no suggestion that the nondisclosure indicates partiality or bias; and where it is conceded that there was in fact no irregularity, unfairness, bias, or partiality. Until the decision today, it has not been the law that an arbitrator's failure to disclose a prior business relationship with one of the parties will compel the setting aside of an arbitration award regardless of the circumstances.[1]

---

[1] See *Firemen's Fund Ins. Co.* v. *Flint·Hosiery Mills*, 74 F. 2d 533 (C. A. 4th Cir. 1935); *Texas Eastern Transmission Corp.* v. *Barnard*, 177 F. Supp. 123, 128–129 (D. C. E. D. Ky. 1959), rev'd on other grounds, 285 F. 2d 536 (C. A. 6th Cir. 1960); *Ilios Shipping*

I agree that failure of an arbitrator to volunteer information about business dealings with one party will, prima facie, support a claim of partiality or bias. But where there is no suggestion that the nondisclosure was calculated, and where the complaining party disclaims any imputation of partiality, bias, or misconduct, the presumption clearly is overcome.[2]

I do not believe that it is either necessary, appropriate, or permissible to rule, as the Court does, that, regardless of the facts, innocent failure to volunteer information constitutes the "evident partiality" necessary under § 10 (b) of the Arbitration Act to set aside an award. "Evident partiality" means what it says: conduct—or at least an attitude or disposition—by the arbitrator favoring one party rather than the other. This case demonstrates that to rule otherwise may be a palpable injustice, since all agree that the arbitrator was innocent of either "evident partiality" or anything approaching it.

Arbitration is essentially consensual and practical. The United States Arbitration Act is obviously designed to protect the integrity of the process with a minimum

---

& *Trading Corp.* v. *American Anthracite & Bituminous Coal Corp.*, 148 F. Supp. 698, 700 (D. C. S. D. N. Y.), aff'd, 245 F. 2d 873 (1957); *Cross Properties, Inc.* v. *Gimbel Bros.*, 15 App. Div. 2d 913, 225 N. Y. S. 2d 1014, aff'd, 12 N. Y. 2d 806, 187 N. E. 2d 129 (1962). Cf. *Isbrandtsen Tankers, Inc.* v. *National Marine Engineers' Beneficial Assn.*, 236 N. Y. S. 2d 808, 811 (1962).

[2] At the time of the contract and the arbitration herein, § 18 of the Rules of the American Arbitration Association, which the Court quotes, was phrased merely in terms of a "request" that the arbitrator "disclose any circumstances likely to create a presumption of bias or which he believes might disqualify him as an impartial Arbitrator." In 1964, the rule was changed to provide that "the prospective neutral Arbitrator *shall* disclose any circumstances likely to create a presumption of bias or which he believes might disqualify him as an impartial Arbitrator." (Emphasis supplied.)

of insistence upon set formulae and rules.[3]   The Court applies to this process rules applicable to judges and not to a system characterized by dealing on faith and reputation for reliability.   Such formalism is not contemplated by the Act nor is it warranted in a case where no claim is made of partiality, of unfairness, or of misconduct in any degree.

---

[3] The reports on the Act make this purpose clear.  H. R. Rep. No. 96, 68th Cong., 1st Sess., 1–2; S. Rep. No. 536, 68th Cong., 1st Sess., 3.   Cf. *Wilko* v. *Swan,* 346 U. S. 427, 431 (1953).