In the Matter of the Arbitration between
GARFIELD & CO., Petitioner,
and
Francis J. WIEST, Respondent.
No. 69 Civ. 264.

United States District Court,
S. D. New York.

Jan. 16, 1970.

Baker, Nelson, Williams & Mitchell, New York City, for petitioner; C. Dickerman Williams, Leslie Kirsch, New York City, of counsel.

Grandefeld & Goodman, New York City, for respondent; Mortimer Goodman, New York City, of counsel.

Milbank, Tweed, Hadley & McCloy, New York City, for amicus curiae New York Stock Exchange; Andrew J. Connick, New York City, of counsel.

McGOHEY, District Judge.

The petitioner, a member firm of the New York Stock Exchange, moved pursuant to the Arbitration Act [1] to vacate an award made in an arbitration between it and a former general partner, also a member of the Exchange. The respondent opposed on jurisdictional and other grounds and later, while the motion was under consideration, moved on jurisdictional grounds for remand to the New York Supreme Court, or in the alternative for entry of judgment on the award. Both motions are here considered. The Exchange, with leave of the court, filed an amicus brief and argued in opposition to the petition and in support of the award. The petitioner's motion is denied. The respondent's motion for judgment is granted.

The arbitration involved the respondent's claim for money allegedly due him upon his withdrawal from the petitioner and the latter's counterclaim for damages resulting from the respondent's alleged disloyalty in violation of the parties' partnership agreement. The arbitrators awarded the respondent $68,965.-29, assessed $600 costs against the peti-

1. 9 U.S.C. § 6.

tioner and dismissed its counterclaim. The petition alleges the award was procured by "undue means" or "evident partiality" in the arbitrators.[2]

The petitioner is a limited partnership organized under New York law. It consists of three general partners and one limited partner. The general partners are all citizens of New Jersey.[3] The respondent is a citizen of New York. The amount in controversy exceeds $10,000 exclusive of interest and costs.

The fourth article of the partnership agreement provides: "The copartnership shall conduct a business of general brokerage in stocks, bonds and other securities and in commodities usually traded or dealt in on National Exchanges and in the over the counter markets, and in the purchase, sale, investment and dealing in stocks, bonds and other securities and in commodities and in acting as specialists on National Exchanges; and, in general the copartnership shall engage in such business as is usually conducted by Exchange brokers, securities dealers and Exchange specialists in the City of New York and wherever else the firm may hereafter do business."[4] The twenty-fifth article of the partnership agreement provides: "Any controversy or claim arising out of, or relating to, this agreement or the breach thereof, or to any matter in connection therewith, shall be settled in New York City by arbitration in accordance with the Constitution and Rules then obtaining of the New York Stock Exchange, and judgment upon the award rendered may be entered in the highest court of the forum, State or Federal, having jurisdiction."[5] The business described in the fourth article which the parties carried on for more than six years certainly involved interstate commerce[6] and it is clear that, "at the time [the parties] entered into [the partnership agreement] and accepted the arbitration clause, they *contemplated* substantial interstate activity."[7] The controversy between them arose out of that agreement and therefore is within the terms of the Arbitration Act.[8]

The court has jurisdiction.

The arbitration was conducted in accordance with the Constitution and Rules of the Exchange which require that controversies between members be submitted for arbitration by five members of the Board of Arbitrators of the Exchange. This board consists of fifteen members of the Exchange appointed after each annual election by the Chairman of the Board of Governors, subject to that board's approval.

Prior to the respondent's withdrawal from the petitioner he was its floor specialist in a small number of securities. Shortly after his withdrawal he became a partner and floor specialist of Spear, Leeds and Kellogg, a prominent member firm whose members or representatives are floor specialists in a large number of securities. James C. Kellogg of that firm was, at some unspecified prior time, Chairman of the Board of Governors of the Exchange. It was not shown nor indeed was it contended that he appointed any of the arbitrators who sat in this case to the Board of Arbitrators or that he or anyone in his firm or on his behalf caused any of them to be so

---

2. Id. § 10.

3. Respondent's Ex. 1, p. 2. This exhibit shows the limited partner also is a citizen of New Jersey although that is immaterial since the object of this proceeding is not "to enforce a limited partner's right against or liability to the partnership." New York Partnership Law § 115; Colonial Realty Corporation v. Bache & Co., 358 F.2d 178, 183–184 (2d Cir. 1966).

4. Petitioner's Ex. A, p. 2.

5. Petitioner's Ex. A, p. 15.

6. 15 U.S.C. § 78b. See also United States v. Re, 336 F.2d 306, 315 (2d Cir.), cert. denied, 379 U.S. 904, 85 S.Ct. 188, 13 L. Ed.2d 177 (1964).

7. Metro Industrial Painting Corp. v. Terminal Construction Co., Inc., 287 F.2d 382, 387 (2d Cir. 1961) (Lumbard, Chief Judge, concurring).

8. 9 U.S.C. §§ 1, 2.

appointed; or to be chosen to serve in this case. Those who served here appear to have been chosen to do so by the Arbitration Director of the Exchange who was neither alleged nor shown to have been appointed by or otherwise associated with Mr. Kellogg. As far as appears the Director first disclosed the names and firms of the panel members to the parties in the notice of the first hearing which he gave them about two weeks before the appointed date. The notice contained the following statement: "Should any party or counsel believe an arbitrator disqualified for any cause, he should notify the Arbitration Director at once." [9] The notice was accompanied by a document entitled Arbitration Procedures Pamphlet which contained the following provision: "Upon receipt of the notice, a party may challenge any arbitrator for cause by written notice to the Arbitration Director. If the challenge is sustained by the Arbitration Director, another arbitrator will be chosen as a replacement." [10] Neither party challenged an arbitrator either in writing or otherwise in the period between receipt of the notice and the first hearing.

At the start of the first session the petitioner's counsel moved the arbitrators orally on two grounds to dismiss the proceeding and remit the parties to their remedies at law, pursuant to the following provision in Section 7 of Article VIII of the Exchange's Constitution: "The arbitrators in any case may at any time during the proceedings, and shall upon the joint request of the parties thereto, dismiss the proceedings and refer the parties to their remedies at law." [11] The respondent did not join in the motion. Counsel for the petitioner stated his first ground as follows:

"a party of the other side, a partner of Mr. Wiest, a person whose conduct I shall feel called upon to criticize in the course of the proceedings, is a very well known member of the Exchange, Mr. Kellogg, former Chairman of the Board of Governors. Mr. Garfield, on the other hand, is a relatively little known member of the Exchange and I doubt very much if any of you have had occasion to do business with him. On the other hand, I am sure that you all have had occasion to do business, and perhaps regularly do business, with Spear, Leeds & Kellogg, of which Mr. Kellogg is the leading partner.

"I do not want to seem to reflect upon your fairness and the honesty and the confidence with which you will approach the issues in this case but I do suggest, however, under such circumstances as exist here, it is a kind of embarrassment dealing, on the one side, with a person one knows, with one whose firm does business with and, on the other hand, a person of whom one knows very little, perhaps have never known of at all until this proceeding came along." [12]

The second ground of the motion was that the controversy involved legal principles whose application although "relatively simple for a court of law might prove to be difficult for [the arbitrators.]" The only arbitrator who commented on the motion was the panel chairman who said: "On behalf of the Arbitrators, I am going to take enough time to assure you that the position to which you referred of knowing one man is entirely familiar to the Arbitrators and I don't think any of them have favoritism on their consciences. I say that just to reassure you." [13] The arbitrators then went into executive session after which the chairman announced their denial of the motion. The proceeding was later concluded after several hearings without further challenge to the arbitrators.

■ The petitioner has not charged either corruption or actual bias in the

9. Respondent's Ex. IV, p. 2.

10. Respondent's Ex. V, p. 7.

11. Respondent's Ex. II, p. 3.

12. Petition, pp. 9–10, par. 34.

13. Answer, pp. 6–7, par. Seventeenth.

arbitrators. Its contention on this motion is, rather, that the award must be vacated because, although the matter was brought to their attention by the motion just described, "the respective Arbitrators did not disclose to the petitioner their business dealings with the Kellogg firm, though any such dealings, in the nature of things, were known to the Kellogg firm of which respondent was a member." [14] Commonwealth Coatings Corp. v. Continental Casualty Co.[15] on which the petitioner relies was decided eight months after the instant arbitration hearings commenced and one month before the challenged award was made. As far as appears it was not brought to the arbitrators' attention prior to the award.

Commonwealth involved a proceeding under the Arbitration Act in which the parties were a painting subcontractor and the sureties of the prime contractor on a large building construction project in Puerto Rico. The subcontract contained an arbitration clause pursuant to which each party designated one arbitrator and these two selected a third. Although the prime contractor was a "regular customer" of the third arbitrator, having employed him from time to time as an engineering consultant and paid him fees of approximately $12,000 over a period of four or five years, these facts were unknown to Commonwealth "and were never revealed to it by this arbitrator, by the prime contractor, *or by anyone else* (emphasis supplied) until after the award had been made." [16] Commonwealth's motion to vacate the award on the ground, among others, of the arbitrator's failure to disclose his business relationship with the prime contractor was denied by the District Court and the Court of Appeals for the First Circuit affirmed.[17] Both courts found there was no "prejudice or bias in fact manifested in the course of the proceedings," [18] a claim which Commonwealth asserted in those courts but abandoned in the Supreme Court.[19] While the Court of Appeals thought "it would have been far better if there had been disclosure" it was unable to "say that the relationship was sufficiently close to establish 'evident partiality' within the statute as a matter of law." [20]

The Supreme Court rejected the lower courts' construction of the statute and reversed. It had no doubt that "if a litigant could show that a foreman of a jury or a judge in a court of justice had, *unknown to the litigant* (emphasis supplied) any such relationship, the judgment would be subject to challenge" [21] in light of the court's decision in Tumey v. Ohio.[22] The Supreme Court there reversed, as a denial of due process, a criminal conviction by a village mayor because the only compensation he received for his judicial services consisted of the statutory fees, amounting to about $100 a month,[23] he assessed against those he convicted. The Commonwealth court could "see no basis for refusing to find the same concept [embodied in this application of the constitutional principle to courts] in the broad statutory language that governs arbitration proceedings and provides that an award can be set aside on the basis of 'evident partiality' or the use of 'undue means'." [24] It held the failure of both the arbitrator and the prime contractor to give Commonwealth "even an intimation" of their close financial relations, a "manifest violation of the strict morality and fair-

14. Petition, p. 11, par. 36.

15. 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968).

16. 393 U.S. 146, 89 S.Ct. 338.

17. 382 F.2d 1010 (1 Cir. 1967).

18. Id. 1012.

19. 393 U.S. 147, 89 S.Ct. 337.

20. 382 F.2d 1012.

21. 393 U.S 148, 89 S.Ct. 339.

22. 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749, 50 A.L.R. 1243 (1927).

23. Id. at 532, 47 S.Ct. 437.

24. 393 U.S. 148, 89 S.Ct. 339.

ness Congress would have expected [on their part]" [25] and ruled that "arbitrators [should] disclose to the parties any dealings that might create an impression of possible bias." [26]

The facts here are substantially and materially different from those in Commonwealth. While the instant petition charging, on information and belief (par. 32), that the "members of both the Board and the panel of arbitrators * * or their firms, regularly conducted business with the Kellogg firm of which respondent was a partner in amounts *more than trivial* [27] in securities [in which Wiest and the Kellogg firm were specialists] both before and during the arbitration," (emphasis supplied) was not filed until after the award, it is not and indeed could not be contended that the "information" was acquired and the "belief" formed only *after* the award. As already noted, the petition (par. 34) shows that when the parties first appeared before the arbitrators, the petitioner's counsel was *"sure"* that all of the latter had "had occasion to do business, and perhaps regularly do business with Spear, Leeds and Kellogg * * *." (emphasis supplied) Accordingly, that there had been in the past and currently were, "more than trivial" business relations between the arbitrators and the Kellogg firm, was thus known to Garfield & Co. at that time at least, and it is to the last degree improbable that it lacked this knowledge two weeks earlier when the names of the members of the panel appointed by the Arbitration Director were disclosed to it. Although the petitioner had sufficient information on which to base a challenge, it did not file one with the Arbitration Director before the hearings commenced, as it was entitled and indeed invited to do. Significantly, even the motion it made at the first hearing did not challenge any arbitrator's integrity or seek his disqualification by reason of possible interest. On the contrary, counsel specifically disclaimed any purpose "to reflect upon [their] fairness and * * * honesty." He was clearly concerned, as the second ground of his motion shows, to have the controversy tried by a court rather than arbitrators. Accordingly, it seems clear and this court finds that, while unwilling to challenge any of them, he hoped to persuade all of them to remit the controversy to the State Court in order to spare themselves any embarrassment they might experience if they should have to decide against a member of the Kellogg firm. In view of counsel's sophisticated statement, it would have been the merest formalism for the arbitrators to respond to his argument by repeating to him the facts he had just recited about their business relations with that firm; facts which they, by not denying, in effect admitted. They did not, it is true, disclose the number or dollar value of their respective dealings with the Kellogg firm but, in the circumstances, such detail was by no means essential for a legally sufficient challenge. The petitioner, although sufficiently informed to be able to do so, chose, for its own reasons, not to make any challenge. Now that it has lost in the arbitration, it should not be heard to claim that the arbitrators' conduct denied it the opportunity to make what we find to have been a free and informed choice.

The respondent's motion to dismiss for lack of jurisdiction is denied and it is So Ordered.

The petitioner's motion to vacate the award is denied and it is So Ordered.

The respondent's motion for entry of judgment on the award is granted and judgment may be entered accordingly.

It is So Ordered.

---

25 Id. at 147–148, 89 S.Ct. at 339.

26. Id. at 149, 89 S.Ct. at 339.

27. The phrase appears to have been taken from Justice White's concurring opinion in Commonwealth in which Justice Marshall joined, 393 U.S. 151–152, 89 S. Ct. 337.