See also D.C., 576 F.Supp. 1128.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 323, Plaintiff,**

v.

**CORAL ELECTRIC CORP. and Beach Electric Corp., Defendants.**

**No. 82–8459–CIV.**

United States District Court,
S.D. Florida, N.D.

Jan. 2, 1985.

Richard Siwica, Fort Lauderdale, Fla., for plaintiff.

Robert Kofman, Miami, Fla., for defendants.

## ORDER

GONZALEZ, District Judge.

THIS CAUSE has come before the court upon the defendants' motion to compel answers to oral questions on deposition. The Court has considered the motion, the memoranda filed by both parties, and the oral arguments of counsel, and being otherwise duly advised, it is

ORDERED AND ADJUDGED that the defendants' motion to compel answers to oral questions on deposition be and the same is hereby GRANTED.

In this case defendants have challenged the impartiality of the arbitration proceeding and award, submitting that the author of the award is a partner in the law firm that represented the plaintiff before the panel. Defendants' contentions are substantially corroborated in the deposition of George Hudspeth, Jr., the union's business manager. According to Mr. Hudspeth's deposition and the memoranda and statements of counsel, Steven Bloom, a partner in the law firm of Kaplan, Sicking, Hessen, Sugerman, Rosenthal, Sussking, Bloom & De Castro, P.A., represented the union in the arbitration and also served as counsel to the Joint Labor-Management Committee. Additionally, Robert Sugerman, a partner in the same firm, authored the arbitration opinion.

To proceed with its defense, defendants seek to discover the contents of conversations between Mr. Hudspeth and attorneys at Kaplan, Sicking after the first arbitration hearing. Although the union maintains that this information is protected by the attorney-client privilege, the employers contend that it is discoverable under one of two exceptions to that privilege. Exception one provides that if an attorney represents two parties with respect to a single matter, then communications with respect to that matter are not privileged from disclosure in a subsequent dispute between the two clients. See Garner v. Wolfinbarger, 430 F.2d 1093, 1103 (5th Cir.1970). Exception two provides that the attorney-client privilege does not adhere to communications made in furtherance of a fraud. See In re Grand Jury Proceedings, 680 F.2d 1026, 1028–29 (5th Cir.1982).

To discover otherwise privileged communications, defendants initially must show that because of plaintiff's relationship with the Kaplan, Sicking law firm, there is good reason to believe that Mr. Sugerman's arbitration award evidences "evident partiality". 9 U.S.C.A. § 10(b) (1970) (court may vacate arbitrator's award "[w]here there was evident partiality ... in the arbitrator [ ]. . . .") If such bias is suspected, then the defendants should be able to go forward with their defense of fundamental unfairness in the arbitration proceedings.

"Evident partiality", like obscenity, is an elusive concept: one knows it when one sees it, but it is awfully difficult to define in exact terms. No jurist has yet coined an exacting legal standard for "evident partiality", although many have tried. See, e.g., Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968) (arbitrators should abide by same ethical standards required of Article III judges; reasonable appearance of bias justifies vacating arbitration award); Morelite Construction Corp. v. Carpenters, 748 F.2d 79, 117 LRRM 3009, 3012 (2d Cir.1984) (evident partiality will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration); Middlesex Mutual Insurance Co. v. Levine, 675 F.2d 1197 (11th Cir.1982) (possibility of arbitrator's evident partiality must be direct, definite and capable of dem-

onstration); *International Produce, Inc. v. A/S Rosshauet,* 638 F.2d 548 (2d Cir.), *cert. denied,* 451 U.S. 1017, 101 S.Ct. 3006, 69 L.Ed.2d 389 (1981) (clear, unexplained evidence of evident partiality required to set aside arbitration award); *Tamari v. Bache Halsey Stuart, Inc.,* 619 F.2d 1196, 2000 (7th Cir.), *cert. denied,* 449 U.S. 873, 101 S.Ct. 213, 66 L.Ed.2d 93 (1980) (reasonable appearance of partiality warrants vacating arbitration award).

The message distilled from these decisions is that the definition of "evident partiality" should be made on a case-by-case basis. Turning then to prior opinions, it appears that an arbitrator who earns fees for consulting services related to the subject arbitration from a party to that arbitration is suspected of evident partiality, *Commonwealth Coatings, supra;* an attorney selected and sworn to be a neutral arbitrator who failed to disclose previous substantial business dealings with one of the parties to the arbitration evidences evident partiality, *Middlesex, supra;* and a father who sits on an arbitration panel which is deciding a matter in which his son has an interest should be suspected of bias or evident partiality, *Morelite, supra.*

■ Using the aforecited cases as a reference, the court concludes that an arbitrator who writes the panel decision and whose law firm serves as the legal counsel for the arbitration committee or a party to the arbitration should be suspected of evident partiality or bias. By this result the court does not hold that the arbitration award is to be vacated. The court holds only that the relationship here at issue is such that a reasonable person would believe it provides strong evidence of bias and thus the communications between Mr. Hudspeth and counsel are discoverable by defendants in accordance with their affirmative defense.

■ The need to ensure the fairness of the arbitration proceeding makes necessary this result. In reviewing an arbitration award, a federal district court must apply a narrow standard of review: "An award is legitimate if it draws its essence from the agreement and only when the arbitrator's words manifest an infidelity to the obligation may the courts refuse enforcement of the award." *IBEW v. Coral Electric Corporation,* 576 F.Supp. 1128 at 1137 (1983); *Drummond Coal v. United Mine Workers of America,* 748 F.2d 1495 at 1497 (11th Cir. Dec. 17, 1984). But no party to the arbitration bargains for an unfair proceeding; indeed, the parties' bargained for nothing less than expedient, efficient justice. An express or implied duty of any court reviewing an arbitration award is to be certain that justice—as defined by the contract—was served. "Were [this court] to lend [its] imprimatur to an award grounded in fraud or bias, the sense of fairness that society demands of its judiciary would be sadly diminished." *Morelite,* 117 LRRM at 3012.

■ Plaintiff attempts to dispel concern about bias in the arbitration award by submitting that Mr. Sugerman's authorship of the arbitration decision is no different than the submission of a proposed order by a prevailing party in federal district court. The court disagrees. There is a significant difference between the two: the arbitration award is final and subject only to limited review if appeal is taken; the proposed order submitted by a prevailing party is *proposed,* and does not become final unless it meets with the court's approval. The court, unlike the arbitrator in this case, has no ties to or interest in any party; these and other institutional safeguards minimize the risk of bias.

■ In this case, the collective-bargaining agreement provides that the parties are each to select three persons to sit as their representatives on the arbitration panel. Collective-Bargaining Agreement §§ 1.10, 1.12. Certainly, each party does not expect its representatives to be predisposed in favor of its opposition. But each party has every right to expect the other's representatives not to be predisposed against them, and all parties are entitled to a fair hearing and a result that accords with the labor contract. The nature of the relationship

between the union and the author of the arbitration award arouses suspicion because a reasonable person would expect one's lawyer to be partial to the lawyer's client.

 As a final parry, plaintiff contends that defendants have waived their right to challenge the fairness of the arbitrator's award by failing to timely object. Plaintiff responds that this court already has ruled that the defendants' failure to raise any defenses before the arbitration panel precludes their raising *some* defenses in this forum. *IBEW*, 576 F.Supp. at 1136. Both parties are partially correct. In the prior order, the defendants had challenged the arbitrator's jurisdiction to entertain the grievance because the agreement allegedly was an unenforceable prehire contract. At that time, however, the defendants did not know that plaintiff's attorney would be writing the arbitration award. Upon discovering this situation, the defendants sought and were granted leave to amend their answer to add an affirmative defense based on the alleged fundamental unfairness of the arbitration proceedings. Order dated Oct. 5, 1984; Amended Answer at 3 (filed Oct. 1, 1984). In order to waive an objection to an arbitrator's partiality, the nonmovant must show that the challenging party knew, or should have known, that a potential arbitrator would be bias. *Commonwealth Coatings, supra; Middlesex, supra; Garfield & Co. v. Wiest*, 432 F.2d 849 (2d Cir.1971). Plaintiff here has failed to establish that there existed at the time of the arbitration proceedings facts which should have put defendants on notice of Mr. Sugerman's selection as author of the arbitration award; no letters or affidavits were produced to show that defendants knew that the law firm retained by plaintiff to represent it in the arbitration proceedings would also be given the task of writing the award. One cannot waive that which one knows nothing about.

Accordingly, upon receipt of this order, the plaintiff is ordered to immediately supply defendants with complete answers to the following questions:

1. What was the discussion [between [George L. Hudspeth, Jr.] and legal counsel concerning holding a second arbitration hearing]?

2. Do you recall having a conversation with Mr. Kaplan or Mr. Sugerman after December 11th and prior to March 1 concerning the advisability or possibility of filing a lawsuit to enforce the arbitration award embodied into the December 7th meeting?