DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PUBLIX SUPERMARKETS, INC.,**
Appellant,

v.

**FAITH CONTE,** as Personal Representative of the **ESTATE OF SUSAN L. MOORE,**
Appellee.

Nos. 4D14-2087, 4D14-2361 and 4D14-3356

[July 29, 2015]

Consolidated appeals from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Dwight L. Geiger, Judge; L.T. Case No. 562009CA000029.

Daniel J. Gerber and Eric J. Eisnaugle of Rumberger, Kirk & Caldwell, P.A., Orlando, for appellant.

Julie H. Littky-Rubin of Clark, Fountain, La Vista, Prather, Keen & Littky-Rubin, LLP, West Palm Beach, and Bradford L. Jefferson of Bradford L. Jefferson, P.A., Fort Pierce, for appellee.

PER CURIAM.

In this consolidated appeal, Publix Supermarkets, Inc. ("Publix") challenges three non-final orders and a final judgment confirming an arbitration award. Publix contends that the trial court erred in entering final judgment while an interlocutory appeal was pending in the case. We agree.

Florida Rule of Appellate Procedure 9.130(f) prohibits a lower tribunal from entering an order disposing of a case during the pendency of an interlocutory appeal:

> In the absence of a stay, during the pendency of a review of a non-final order, the lower tribunal may proceed with all matters, including trial or final hearing, *except that the lower tribunal may not render a final order disposing of the cause pending such review absent leave of the court.*

(Emphasis added.) Final judgments and subsequent orders entered during the pendency of an interlocutory appeal are entered without jurisdiction and are "a nullity." *Connor Realty, Inc. v. Ocean Terrace N. Condo. Ass'n*, 572 So. 2d 4, 4 (Fla. 4th DCA 1990); *see also McKenna v. Camino Real Vill. Ass'n*, 8 So. 3d 1172, 1175 (Fla. 4th DCA 2009).

Because the final judgment here was entered while an interlocutory appeal was pending before us, the final judgment was entered without jurisdiction and must be reversed. However, as noted by the appellee, the interlocutory appeal has been consolidated with the instant appeal and the non-final orders were reviewed simultaneously with the final judgment.

We respectfully find no merit in the issues raised by Publix pertaining to the non-final orders. Accordingly, we reverse without prejudice to the reinstatement of the final judgment.

*Reversed and remanded.*

CIKLIN, C.J., and FORST, J., concur.
KLINGENSMITH, J., concurs specially with opinion.

KLINGENSMITH, J., concurring specially.

I concur in the majority's opinion in this case, but write separately to address an important issue raised in this appeal.

The parties in this case stipulated to voluntary binding arbitration pursuant to section 44.104, Florida Statutes. Under the terms of their stipulation, each party was to select an arbitrator, and the selected arbitrators would then choose a "third 'neutral' arbitrator." After the parties selected their respective arbitrators, the defense arbitrator and the plaintiff arbitrator passed one another in a hallway while working on other matters, and, on the plaintiff arbitrator's suggestion, verbally agreed on a neutral chief arbitrator. Publix later moved to disqualify the selected neutral arbitrator on several grounds, including that there was partiality on the part of the neutral arbitrator because he had worked for and had represented plaintiff's arbitrator in the past, including in an appellate matter that was still pending. At no time did the neutral arbitrator ever voluntarily disclose to the defense arbitrator or to the parties the extent of his relationship with the plaintiff arbitrator.

2

Publix sought the removal of the neutral arbitrator by the trial court, and while the judge denied Publix's motion to disqualify, he required the arbitrators to advise the parties in writing of any circumstances bearing on possible bias, prejudice, or impartiality. In response, the neutral arbitrator sent a letter to counsel for the parties that did not discuss his relationship with the plaintiff's arbitrator, but instead advised in pertinent part:

> I am unaware of any circumstances which bear upon possible bias, prejudice, or impartiality on my part as an arbitrator in this matter.
>
> . . . .
>
> During the course of my career I have served as an attorney for various parties in arbitration on various occasions. I have also served as an arbitrator in various matters as well as a special master, etc. I have also served as a mediator in numerous matters over the course of my career.
>
> As an active, board certified, civil trial lawyer in the state of Florida, I am well aware of . . . the appropriate professional ethical standards and responsibilities of an arbitrator.

Publix then filed another motion to disqualify the neutral arbitrator following this court-ordered disclosure, which again was denied. Upon the commencement of arbitration, Publix again moved for the panel to disqualify the neutral arbitrator on the basis of partiality. That motion was denied by a 2-1 vote of the arbitrators, with the neutral arbitrator casting the deciding vote to deny his own disqualification.

In this appeal, Publix again argues that, to the extent Chapter 682 applies, the neutral chief arbitrator should have been disqualified due to the appearance of partiality in his relationship with the plaintiff arbitrator and for his failure to disclose the extent of their relationship.

Any tribunal permitted to try cases, including arbitrators, "must avoid even the appearance of partiality." *Int'l Ins. Co. v. Schrager*, 593 So. 2d 1196, 1197 (Fla. 4th DCA 1992) (reversing order approving arbitration award where arbitrator "was advised that the insurer against which he was pursuing a bad faith claim on behalf of another insured was part of the same insurance group" as the appellant, therefore rendering his

3

participation in the arbitration erroneous). "'[T]o disqualify an arbitrator, *it need not be shown that bias influenced his judgment, but only that there was a circumstance tending to bias that judgment.*" *Id.* at 1196 (quoting *Gaines Constr. Co. v. Carol City Utils., Inc.*, 164 So. 2d 270, 272 (Fla. 3d DCA 1964)). Additionally, "an arbitration award should be set aside where the panel 'might reasonably be thought biased.'" *Id.* at 1197 (quoting *Commonwealth Coatings Corp. v. Cont'l Cas.*, 393 U.S. 145, 150 (1968)).

Appellee's assertion in this appeal that the neutral arbitrator had no duty whatsoever to disclose his relationship with the plaintiff arbitrator prior to his appointment is expressly contradicted by both the Florida Rules of Arbitration and the Florida Statutes.

Florida Rule of Arbitration 11.080 requires arbitrators to disclose any past, present, or possible future representation of attorneys involved in the arbitration, and places the burden of withdrawal on the arbitrator if he believes or perceives a "clear conflict of interest":

> (a) Impartiality. An arbitrator shall be impartial . . . . Impartiality means freedom from favoritism or bias in word, action, and appearance.
>
> . . . .
>
> (b) Conflicts of Interest and Relationships; Required Disclosures; Prohibitions
>
> (1) An arbitrator *must* disclose any current, past, or possible future representation or consulting relationship *with any party or attorney involved in the arbitration. Disclosure must also be made of any pertinent pecuniary interest.* . . .
>
> . . . .
>
> (3) *The burden of disclosure rests on the arbitrator.* After disclosure, the arbitrator may serve if both parties so desire.

Fla. R. Arb. 11.080(a)-(b) (emphasis added).

By its terms, the Florida Rules of Arbitration apply to "all arbitrators who participate in arbitration conducted pursuant to chapter 44." Fla. R. Arb. 11.030(a).

Even though the parties agreed to arbitrate pursuant to Chapter 44, the provisions of Chapter 682 nonetheless applied to those proceedings as well.  Under section 682.041, Florida Statutes, an arbitrator has an affirmative obligation to disclose to the parties an existing or past relationship with another arbitrator involved in the arbitration:

> (1) *Before accepting appointment*, an individual who is requested to serve as an arbitrator, after making a reasonable inquiry, *shall disclose* to all parties to the agreement to arbitrate and arbitration proceeding and to any other arbitrators *any known facts that a reasonable person would consider likely to affect the person's impartiality as an arbitrator in the arbitration proceeding, including*:
>
> . . . .
>
> (b) *An existing or past relationship with . . . another arbitrator.*
>
> . . . .
>
> (3) If an arbitrator discloses a fact required by subsection (1) or subsection (2) to be disclosed and a party timely objects to the appointment or continued service of the arbitrator based upon the fact disclosed, the objection *may* be a ground under s. 682.13(1)(b) for vacating an award made by the arbitrator.
>
> (4) If the arbitrator did not disclose a fact as required by subsection (1) or subsection (2), upon timely objection by a party, the court *may* vacate an award under s. 682.13(1)(b).

§ 682.041, Fla. Stat. (2013) (emphasis added).  Therefore, pursuant to section 682.041, it appears clear that the neutral arbitrator was required to disclose his relationship with the plaintiff arbitrator prior to accepting the appointment.  The fact that the defense arbitrator agreed to accept the neutral arbitrator carries little weight since assent to his appointment was obtained without any disclosure.

Even though the fact that the neutral arbitrator was once employed by the plaintiff arbitrator approximately thirty years ago may be so remote that his impartiality would not be affected and disclosure might not be required, it would be ludicrous to suggest that the neutral

arbitrator's more recent engagement to represent the plaintiff arbitrator's law firm would be so irrelevant to the issue of his partiality that any party standing in Publix's shoes would feel that a disclosure is unwarranted. In fact, counsel for the appellee conceded as much at oral argument when they admitted that this was precisely the kind of information they themselves would want to know about an arbitrator if they were in a similar position.

Despite the obligations imposed by these provisions, there does not appear to be any case law opining on the extent of the disclosure of relationships between arbitrators that is required under these provisions. However, there are cases interpreting section 682.13 which hold that the partiality of an arbitrator must be "evident" before it can serve as a basis to vacate an arbitration award. *See* § 682.13(1)(b)1., Fla. Stat. (2013) (providing that a court shall vacate an arbitration award if there was "evident partiality" by a neutral arbitrator). While not directly on point, the Fifth District held, after engaging in a lengthy analysis of authority opining on the challenges to arbitration awards on the basis of bias, that "evident partiality" must be shown as a basis to vacate an arbitration award:

> We conclude that the weight of authority developed after *Commonwealth Coatings* requires a review of the evidence utilizing the "reasonable impression of partiality" standard. As such, we find that the trial court properly weighed RDC's allegations of [the chief arbitrator's] evident partiality by considering whether RDC made a showing through credible evidence, giving rise to a "reasonable impression of partiality" that was "direct, definite, and capable of demonstration," as distinct from a "mere appearance" of bias that was remote, uncertain, and speculative.

*RDC Golf of Fla. I, Inc. v. Apostolicas*, 925 So. 2d 1082, 1095 (Fla. 5th DCA 2006). In *RDC*, the neutral chief arbitrator and the attorney for one of the parties were jointly representing a synagogue in a separate matter involving a rabbi while the arbitration was pending. *Id.* at 1084. The Fifth District concluded that the non-disclosure in that case did not create a "reasonable impression of partiality." *Id.* at 1095.

In another case, *Brandon Jones Sandall Zeide Kohn Chalal & Musso, P.A. v. Beasley & Hauser, P.A.*, 925 So. 2d 1142, 1143-46 (Fla. 4th DCA 2006), this court affirmed a trial court's order refusing to vacate an arbitration award on the basis of partiality where the neutral arbitrator had contacts with three of the claimant's attorneys regarding a matter

6

entirely outside of the substance of the arbitration proceedings. Citing the reasoning of *RDC*, we explained that "the partiality of the neutral must be obvious and plain and must be shown to have unfairly affected the rights of the complaining party." *Id.* at 1145.

The relationship between the neutral arbitrator and the plaintiff arbitrator, though rising to a level that required disclosure, does not necessarily create such "evident partiality," § 682.13(1)(b)1., or a "'reasonable impression of partiality,'" *RDC*, 925 So. 2d at 1095, toward one party or the other such that the neutral arbitrator's disqualification was mandatory. At most, Publix established the "'mere appearance' of bias that was remote, uncertain, and speculative," *id.*, but was not enough to establish evident partiality.

My concurrence with the majority decision also rests on the fact that the language of section 682.041(4) allows for the trial court to exercise its discretion in these matters, as it states "the court *may* vacate an award" where an arbitrator fails to disclose a fact, as opposed to "*shall* vacate." § 682.041(4). The trial court's ability to use its discretion to affirm an arbitration award under these circumstances exists entirely independent of whatever the neutral arbitrator's obligations under the aforementioned arbitration rules might be.

Due to the lack of any cited authority requiring disqualification where there is a pre-existing business relationship between two arbitrators, and in light of our holding in *Brandon* that a relationship between neutral arbitrators and counsel can be "harmless," I concur with the decision to affirm.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**