Kenneth L. KEITH, Plaintiff–Appellant,

v.

Larry G. MASSANARI, Acting Commissioner of Social Security, Defendant–Appellee.

No. 00–2019.

United States Court of Appeals, Seventh Circuit.

Argued Aug. 7, 2001.

Decided Aug. 23, 2001.

Before COFFEY, KANNE, and WILLIAMS, Circuit Judges.

## ORDER

Kenneth Keith filed an application, his sixth, for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, alleging disability since March 10, 1977, based on back problems and a foot deformity caused by childhood polio. The Administrative Law Judge ("ALJ") found that Keith was not disabled because his impairments did not prevent him from performing light work. Keith filed this action under 42 U.S.C. § 405(g), alleging that the ALJ was biased against him and thus improperly minimized the significance of his foot deformity. The district court dismissed the claim, and Keith appeals. We reverse and remand for further proceedings.

Keith, who was born in 1951, completed high school and has past relevant work as a factory worker. He has not worked since 1977, when he injured his back while lifting a heavy object at his job. When he was last insured for benefits, on September 30, 1982, he was 30 years old.

### 1. *Medical Evidence*

The district court's opinion exhaustively discusses the medical evidence. Because the record is quite sizeable, for the sake of brevity we have summarized much of the evidence here.

In 1977 Keith was admitted to the hospital after a back injury. Diagnostic testing revealed that he had moderate narrowing of the spine and a possible herniated disc. In May 1977 neurologist Dr. Manual Cacdac performed surgery on Keith's lower back.[1] Dr. Cacdac later reported to Keith's employer that Keith could not perform his regular work duties and was entitled to a permanent partial disability rating of 20 percent. Dr. Cacdac diagnosed Keith as suffering from arachnoiditis.[2]

Between 1978 and 1983 Keith saw a series of examining physicians, who reached varying opinions about his condition. These doctors agreed, however, that Keith was limited in his ability to stand, sit, bend, stoop, and carry weights heavier than five to ten pounds due to his back problems. All of the examining doctors also generally noted that Keith's right foot was deformed, with a high arch, apparently due to childhood polio.

Of particular relevance to this appeal is the competing testimony of two medical experts: Dr. Charles Bonsett, a neurologist, who testified at a 1987 Supplemental Security Income ("SSI") hearing that in his opinion Keith met or equaled a Listing of Impairment to qualify him for disability benefits; and Dr. Robert Hutson, an orthopedic surgeon, who testified at the 1997 hearing on Keith's current application for DIB that he did not believe Keith met or equaled a Listing. In 1987, Dr. Bonsett had concluded that Keith met or equaled Listing 1.05C, relating to the musculoskeletal system, because of the combined effects of his back problems and foot deformity. Eligibility under Listing 1.05C requires a claimant to demonstrate that he

suffers from a vertebrae disorder with the following symptoms persisting for at least three months despite prescribed therapy: (1) pain, muscle spasm, and significant limitation of motion of the spine; and (2) appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss. 20 C.F.R. § 404, Subpt. P, App. 1, § 1.05C. Dr. Bonsett testified that, although Keith did not have the requisite muscle spasm, the residual effects of polio were just as significant and he thus met or equaled the Listing. Dr. Bonsett did not examine Keith; his opinion was based largely on a 1987 exam by another physician.

Contrary to Dr. Bonsett's opinion, Dr. Hutson testified at the hearing on Keith's current application for DIB that, based on his review of the medical evidence, Keith did not meet or equal Listing 1.05C because he did not have the appropriate motor loss with muscle weakness, sensory loss, or reflex loss. Dr. Hutson also disagreed with Dr. Bonsett's conclusion that Keith met Listing 1.05C when he was awarded SSI benefits in 1987. Dr. Hutson concluded that there was no evidence Keith had any residual loss of function from polio except for whatever limitations he experienced as a result of having a smaller right foot.

### 2. Claims History

Keith's current application for DIB is the sixth application for benefits that he has filed. His first four applications for DIB and SSI were all denied because the Commissioner determined that his impairments did not prevent him from performing sedentary work.

---

1. Other physicians have since questioned Dr. Cacdac's decision to perform surgery based on Keith's symptoms at that time, and one doctor has concluded that Dr. Cacdac committed "gross misconduct and negligence" in his management of Keith's case.

2. Arachnoiditis is an inflammation of the arachnoid, a delicate membrane surrounding the spinal cord. *Stedman's Medical Dictionary,* at 118–19.

Keith filed his fifth application for benefits on September 17, 1986. His SSI application was granted on July 29, 1987, based primarily on Dr. Bonsett's testimony that Keith met or equaled a Listing when his polio-related impairments were taken into account. The ALJ awarded benefits but declined to designate an onset date before the date of Keith's most recent application. A different ALJ denied Keith's application for DIB on res judicata grounds, concluding that the Agency had previously determined Keith was not disabled as of his date last insured in 1982, and he had submitted no new evidence to show that he was disabled as of 1982.

On June 11, 1993, Keith filed this current application for DIB alleging that he had been disabled since March 10, 1977. He argued essentially that his onset date should be changed to incorporate the evidence of "polio residuals" before 1977. ALJ Robert Droker, who had not decided any of the earlier cases, denied the application on res judicata grounds. After the Appeals Council denied relief, Keith sought review of the Agency's decision in district court. Because the earlier decision on the merits was rendered before enactment of amendments to the Social Security Act, the parties agreed to dismiss the case and remand for a determination on the merits under the current law.

On remand the case was again heard by ALJ Droker, who again determined that the DIB application should be denied based on res judicata. The Appeals Council disagreed, finding that Keith was entitled to a hearing to consider the effects of his polio-related impairments, which were not considered in his prior DIB hearing. The Council vacated the decision and ordered the ALJ to render a decision on the merits.

### 3. The ALJ's Decision

On January 28, 1998, ALJ Droker determined that Keith was not disabled as of 1982 because in spite of his impairments he could still perform light work. Keith was suffering from a "severe impairment," namely, degenerative lower back disease coupled with a polio-related foot deformity. Keith's impairment did not, however, meet or equal Listing 1.05C. The ALJ gave greater weight to the opinion of Dr. Hutson than that of Dr. Bonsett, finding that Dr. Hutson's specialty in orthopedics (which relates to the musculoskeletal system) was more relevant to a determination of whether Keith had a musculoskeletal impairment. The ALJ also found that Dr. Hutson's opinion was better supported by the objective findings in the record.

The ALJ determined that Keith still had the ability to perform light work. To the extent that Keith argued he could not perform the capacities described by Dr. Hutson, Keith's subjective complaints were, according to the ALJ, "disproportionate to the objective findings of the medical record, exaggerated, and not credible." With respect to Keith's polio, the ALJ determined that Keith's foot abnormalities "did not cause significant pain" and were not "greatly limiting." The ALJ concluded that because Keith could still perform a limited number of jobs, he was not entitled to DIB. The ALJ also determined that the 1987 decision awarding Keith SSI benefits had been made in error and ordered that his benefits cease.

The Appeals Council then affirmed the ALJ's denial of DIB, but found that the issue of Keith's continuing eligibility for SSI was not properly before the ALJ and reinstated his benefits. Keith filed this suit in the district court pursuant to 42 U.S.C. § 405(g), alleging that the ALJ was biased against him and improperly denied his application for DIB.

## ANALYSIS

"Disability," as defined by the Social Security Act, is the inability to engage in any substantial gainful activity by reason of a severe impairment. 42 U.S.C. § 423(d)(1)(A). The claimant must demonstrate that his impairment prevents him from doing his previous work, as well as any other type of gainful employment that exists in the national economy, based on the claimant's age, education, and work experience. *Id.* § 423(d)(2)(A). To be eligible for disability insurance benefits, an individual must establish that he was disabled during the time he was insured for benefits. *See* 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. § 404.131. In reviewing the ALJ's decision, this court does not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford v. Apfel,* 227 F.3d 863, 869 (7th Cir.2000). This court examines the entire record but does not disturb the ALJ's determination if it is supported by "substantial evidence," which requires "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Henderson v. Apfel,* 179 F.3d 507, 512 (7th Cir.1999).

On appeal Keith argues that the ALJ, because of a predisposition to deny his claim, failed to properly consider the evidence of Keith's polio-related impairments. The right to trial by an impartial decisionmaker is a basic requirement of due process. *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955). A tribunal must not only be unbiased but must also avoid even the appearance of bias. *See Commonwealth Coatings Corp. v. Cont'l Casualty Co.,* 393 U.S. 145, 150, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968); *SEC v. Antar,* 71 F.3d 97, 101 (3rd Cir.1995). Such is the "sine qua non" of the American legal system. *Haines v. Liggett Group, Inc.,* 975 F.2d 81, 98 (3rd Cir.1992).

Although an administrative adjudicator is presumed to be unbiased, *see Schweiker v. McClure,* 456 U.S. 188, 195, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982), this presumption can be rebutted by showing that the ALJ "displayed deep-seated and unequivocal antagonism that would render fair judgment impossible." *Liteky v. United States,* 510 U.S. 540, 556, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). Rulings alone are almost never sufficient evidence of bias. *Id.* at 555; *Marozsan v. United States,* 90 F.3d 1284, 1290 (7th Cir.1996). Instead, evidence is required that the decisionmaker "had it in" for the party for reasons unrelated to the officer's view of the law. *McLaughlin v. Union Oil Co.,* 869 F.2d 1039, 1047 (7th Cir.1989).

Courts do not lightly conclude that a judicial bias claim has been established. *See United States v. Microsoft Corp.,* 56 F.3d 1448, 1463 (D.C.Cir.1995). We conclude here, however, that the ALJ's overall actions in this case raise at least the appearance of unfair bias against Keith. The ALJ twice denied Keith's claim on res judicata grounds, even after the case had been remanded for a hearing on the merits. Moreover, the ALJ reached far beyond the issue he was to decide at the hearing and terminated Keith's SSI benefits, the main source of support for Keith and his family. We believe that these actions as a whole raise the appearance of partiality, necessitating that Keith's claim be heard by a different ALJ. *See id.* at 1463–65 (combined effect of judge's contrary rulings and negative comments about defendants would cause reasonable observer to question judge's impartiality); *Antar,* 71 F.3d at 102 (judge's comments creating appearance of bias against defendant required reversal and remand to different judge); *United States v. Donato,* 99 F.3d 426, 434–39 (D.C.Cir.1996) (judge's intense hostility toward defendant and defense counsel raised serious question of bias);

*see also* LeBlanc–Sternberg v. Fletcher, 9 F.Supp.2d 397, 404–405 (S.D.N.Y.1998) (district judge who disagreed with appellate court's reversal of his decision that plaintiffs were not entitled to attorney's fees recused himself on remand for determination of proper fee award).

REVERSED and REMANDED for further proceedings.