In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 05-2527

PEGGY KEITH,

*Plaintiff-Appellant,*

*v.*

JO ANNE BARNHART, Commissioner
Of Social Security,

*Defendant-Appellee.*

---

Appeal from the United States District Court
for the Southern District of Indiana, Terre Haute Division.
No. 03-C-342—**Richard L. Young**, *Judge.*

---

ARGUED APRIL 13, 2006—DECIDED JANUARY 16, 2007

---

Before COFFEY, KANNE, and WILLIAMS, *Circuit Judges.*

COFFEY, *Circuit Judge.* Kenneth Keith filed a sixth application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), in June of 1993, alleging that he had been disabled under the Act since March 10, 1977, due to his back problems and post-polio impairments. After a hearing, the administrative law judge ("ALJ") determined that Keith was not disabled at any time prior to his loss of insured status in 1982, and denied his application. Thereafter, he sought review, filing an action in the district court pursuant to 42 U.S.C. § 405(g), alleging that he was entitled to a new hearing as his right to due process had been violated due

to the ALJ's bias against him. The district court dismissed his claim. We disagreed, holding that the ALJ's overall actions raised the appearance of bias, reversed the decision and ordered that the case be remanded to the Social Security Administration for further proceedings.

Having received a second hearing before another administrative law judge, and after his application for benefits had been denied and his appeals exhausted, Keith is once again before us alleging that the denial of his application was the product of the ALJ's bias against him rather than based upon a proper consideration of the evidence. We affirm.

## I. Background

Keith, born in 1951, contracted polio at the age of five, leaving him with a high arch deformity in his right foot. After completing high school, he was employed as a factory worker until he suffered a back injury on March 10, 1977, while lifting a lead weight from atop a foundry mold. Approximately one month later, he was admitted to a hospital and diagnosed with a possible herniated disk combined with a moderate narrowing of the spinal canal. Based on these findings, and the ineffectiveness of conservative treatments to alleviate his pain, Keith underwent back surgery in May of 1977.[1] Despite the procedure, Keith alleges that he continued to experience discomfort and was thus unable to return to work. He was last insured for purposes of DIB under the Act on September 30, 1982.

---

[1] The surgery—a total laminectomy of L5, foraminotomy of L5 and S1 nerve roots, and the excision of herniated disc L5-S1—was performed by neurosurgeon Manuel Cacdac. As we noted in our prior order, other physicians have since questioned Dr. Cacdac's decision to perform surgery on Keith based on the nature of his symptoms at that time.

Unable to return to his previous job, Keith sought government assistance, filing four successive applications for Social Security benefits between 1978 and 1983.[2] In connection with these applications, Keith was examined by at least nine doctors, including specialists in the field of musculoskeletal injuries. While the examining physicians or surgeons reached differing opinions regarding the severity of his injuries, they all agreed that Keith's ability to stand, sit, bend, stoop, and lift objects was limited. In spite of these limitations and a diagnosis of arachnoiditis[3] in 1982, each of the aforementioned applications were denied because the respective administrative law judges found that Keith's back ailments did not prevent him from performing sedentary work.[4]

Undeterred, Keith filed a fifth application, seeking both Supplemental Security Income ("SSI") benefits and DIB, in 1986. Fortunately for Keith, Dr. Bonsett, a neurologist, testified at the administrative hearing that the combined

---

[2] In each of his first three applications (filed in 1978, 1979, and 1981 respectively), Keith sought both DIB and Supplemental Security Income ("SSI"). In his fourth application, filed in 1984, after the expiration of his insured status, Keith elected not to renew his request for DIB, instead, choosing only to file for SSI.

[3] *Arachnoiditis* is the inflammation of the arachnoidea, a delicate membrane surrounding the spinal cord. Dorland's *ILLUSTRATED MEDICAL DICTIONARY* 112 (28th ed. 1994).

[4] "Sedentary work involves lifting no more than ten pounds at a time, and occasionally lifting or carrying articles like docket files, ledgers, and small tools[,]" 20 C.F.R. § 404.1567(a); sitting for approximately six hours during an eight hour work day; standing or walking for less than two hours during an eight hour work day; and the use of one's hands and fingers to perform repetitive actions, *Social Security Ruling* 83-10 (PPS-123: Determining Capacity to Do Other Work).

effects of his back ailments and polio residual met or
equaled disability Listing 1.05C,[5] thus making Keith
eligible for benefits. Based in part on Dr. Bonsett's testi-
mony, the ALJ granted Keith's SSI claim on July 29, 1987,
designating the date the application was filed—September
17, 1986—as the disability onset date. Keith's accompany-
ing claim for DIB was heard and denied by a different
ALJ. The administrative law judge there reasoned that
because another ALJ had previously determined that
Keith was not disabled prior to his loss of insured
status in 1982, and no evidence had been submitted in
contradiction to the most recent filings in the current
application, the law of res judicata applied and barred
consideration of his claim.[6]

---

[5] The term "Listing" refers to a list of impairments that the
Social Security Administration presumes are of sufficient
severity to preclude gainful work. Listing 1.05C, as codified at
the time of Keith's application, required that a claimant dem-
onstrate that he suffered from the following symptoms for at
least three months despite prescribed therapy: "(1) pain, muscle
spasm, and significant limitation of motion in the spine; and
(2) appropriate radicular distribution of significant motor loss
with muscle weakness and sensory and reflex loss." 20 C.F.R.
§ 404, Subpt. P., App. 1, § 1.05C (1986). After reviewing the
medical evidence, Dr. Bonsett reasoned that while Keith lacked
the requisite "muscle spasm" necessary to meet the listing, his
polio residuals—specifically hypoplasia, right knee weakness,
and the arch deformity of his right foot—were equally significant,
and thus Keith's impairments satisfied the Listing. In the
interest of completeness, we note that Listing 1.05C was re-
scinded, effective February 19, 2002. Revised Medical Criteria
for Determination of Disability, Musculoskeletal System and
Related Criteria, 66 Fed. Reg. 58,010 (Nov. 19, 2001).

[6] The doctrine of res judicata is explicitly incorporated into
administrative proceedings within the Social Security Adminis-
tration by 20 C.F.R. § 404.957(c)(1).

On June 11, 1993, Keith filed his sixth application for benefits, again claiming disability as of March 10, 1977. After concluding that res judicata was once more applicable, the ALJ denied Keith's claim. The present Appeals Council agreed that the doctrine of res judicata barred Keith's claims and denied review. Pursuing his only remaining course of appeal, Keith filed an action pursuant to 42 U.S.C. § 405 in federal district court. But before the trial judge could render a decision, the parties agreed to dismiss the action and remand the case to the Social Security Administration for a decision on the merits of Keith's claims in light of the 1984 Amendments to the Act.[7]

On remand from the federal court case to the Social Security Administration, the case was heard by a different ALJ. Despite having been directed to render a decision on the merits, he denied the application on the basis of res judicata. The Appeals Council promptly vacated the decision and again instructed the ALJ to consider the merits of Keith's claims.

In accordance with the Council's order, the ALJ conducted a hearing. During the course of the hearing, Dr. Robert Hutson, an orthopedic surgeon, testified that, based on his review of the medical evidence, Keith failed to meet or equal a Listing at any time following his back injury.

>ALJ: Has he ever in your opinion based upon this medical record ever met or equalled [sic] any listing?

---

[7] The 1984 Amendments to the Act altered the manner in which the Administration evaluated the disability claims of individuals with multiple impairments. Because the Social Security Administration determined that the merits of Keith's disability claim had not been considered since the amendments took effect, the parties agreed to a remand of the case.

> Dr.: No, sir. I don't believe even back when he had the surgery that there was some question whether he had objective findings at that time to indicate that this surgery be done.

Dr. Hutson specifically disagreed with Dr. Bonsett's 1987 assessment that Keith met Listing 1.05C based on the cumulative effects of his back condition and polio residuals. To the contrary, Hutson testified that Keith lacked the significant motor loss with muscle weakness, sensory loss, and reflex loss necessary to satisfy the Listing. Moreover, Dr. Hutson stated that there was insufficient medical evidence to conclude that Keith had suffered any residual loss of function on account of his polio-related impairments.

Following the hearing, the ALJ denied Keith's application, finding that his impairments did not meet or equal Listing 1.05C, or prevent him from performing light work. In reaching these conclusions, the ALJ primarily relied upon the medical opinion of Dr. Hutson, reasoning that his opinion was entitled to greater weight than that of Dr. Bonsett because Dr. Bonsett's expertise was in the field of neurology and Dr. Hutson's expertise was in orthopedics. Because the ALJ also determined that the 1987 finding of disability and the additional grant of SSI benefits were erroneous, he ordered the termination of the benefits.

Because the Appeals Council found that the propriety of the previously awarded SSI benefits was not at issue, the Council vacated the ALJ's order terminating Keith's benefits. But, the Council did affirm the denial of his application for DIB. Seeking further review, Keith once again filed an action in the district court pursuant to 42 U.S.C. § 405(g), in which he requested another hearing, alleging, *inter alia,* that the ALJ's most recent decision was the result of bias. The district judge, after review,

found that Keith had failed to establish bias and thus the denial of benefits was proper; Keith appealed.

We concluded that the ALJ's actions, including his initial denial of the application on res judicata grounds despite a directive from the Appeals Council to render a decision on the merits and his termination of Keith's SSI benefits, raised the appearance of partiality and demanded that the application be considered by a different ALJ. *See our reasoning set forth in Keith v. Massanari*, 17 Fed. Appx. 478, 481 (7th Cir. 2001) (unpublished order). We reversed the district court's decision and ordered the case remanded.

**The ALJ's Decision on Remand**

In accordance with our order, the district court did remand the case for a hearing before another ALJ. Prior to the hearing, Keith received notice that Dr. Hutson, the physician who had testified at his prior hearing, had once again been designated as the medical expert and would provide testimony at the upcoming administrative hearing (July 15, 2002). Keith filed a written objection with the ALJ and asked that another medical expert be assigned, based on the ground that, according to Keith, Dr. Hutson was prejudiced against him and that the appellate court (Seventh Circuit), in its prior decision, had also expressed concern over "[Dr. Hutson's] testimony, attitude toward [him,] and general demeanor." After consideration, the ALJ denied the request for the reassignment of a new medical expert, noting that Keith had failed to "allege any facts that would support a claim of prejudice" and further that he found "no support for the claim that [the appellate court] was concerned with Dr. Hutson's attitude or general demeanor." One week prior to the hearing, Keith filed a second written objection, requesting that either a different medical expert

be assigned or the hearing stayed to allow him to pursue an interlocutory appeal of the ALJ's ruling allowing Dr. Hutson to testify. The ALJ denied each of the petitioner's requests, reiterating that Keith had failed to produce evidence of bias. Ultimately, he concluded that Keith's interests, as well as judicial economy, dictated that the case promptly proceed to hearing.

At the hearing, the ALJ allowed Keith's counsel to make an opening statement, during which counsel once again renewed his client's objection to Dr. Hutson being designated as the orthopedic medical expert. The ALJ interjected:

Okay. I don't mean to cut you off here, Counsel. But I was kind of hoping you were going to tell me about this case and not about the jurisdictional provisions of it. And we've already decided the issue. I think there is an entry in the record to that effect. So what I would really like to hear is something about the factual basis for the disability.

Shortly thereafter, in reference to counsel's objection, the ALJ commented:

[c]ounsel, your client should be, you know, satisfied. You raised [the objection]. This is the third occasion now that you've raised it before me alone. So I think [your client] can't expect you to do much more than that.

After counsel's opening statement, testimony was taken from Keith, Dr. Hutson, internist Dr. Emily Geisel, and vocational expert Ray Burger.

On July 26, 2002, having found and held that Keith was not disabled at any time prior to the termination of his insured status, the ALJ denied Keith's claim for disability insurance benefits. The ALJ reasoned that while the evidence established that Keith was suffering from a

"severe impairment" (namely degenerative disc disease), that impairment failed to meet or equal an existing Listing nor did it prevent him from performing limited sedentary work. Moreover, the ALJ concluded that there was no objective medical evidence demonstrating that in 1982, Keith's polio residuals were of such severity that, when considered in combination with his degenerative disk disease, a Listing was satisfied or he was prevented from performing limited sedentary work.[8] Therefore, in light of the evidence presented that a sufficient number of selected sedentary jobs were available in the state of Indiana between 1977 and 1982, Keith's application for benefits was denied.

Following affirmance by the Appeals Council, Keith sought further review, filing this action in the district court, alleging that the ALJ's decision was the product of bias rather than a proper consideration of the evidence as directed by the Appeals Council. We are asked to sit in review of the district court's decision affirming the ALJ's determination and dismissing Keith's civil action.[9]

---

[8] The ALJ found that Keith's condition required the following additional limitations existed with respect to his ability to perform sedentary work: "must be allowed to alternate into a sitting or standing position at his option for periods of one to two minutes per hour; no more than occasional bending, squatting, or climbing of stairs or ramps; no kneeling, crawling, or climbing of ladders, ropes, or scaffolds; avoid walking on uneven surfaces, work at unprotected heights, work around dangerous moving machinery, operating a motor vehicle, and being around open flames or large bodies of water; and no overhead work."

[9] Keith died on May 5, 2005, while his appeal was pending before this court. Peggy Keith, Kenneth Keith's wife, the individual who would stand to receive any sums deemed owed to Keith as past-due benefits, *see* 20 C.F.R. § 404.503(b)(1), was

(continued...)

## II. Analysis

On appeal Keith does not challenge the sufficiency of the evidence supporting the ALJ's determination, but he claims that once again he failed to receive a fair and impartial hearing consistent with due process because of the ALJ's bias against him. Specifically, Keith asserts that the ALJ's decision to permit expert testimony from Dr. Hutson, despite Keith's repeated objections, and the ALJ's comments during the course of the hearing are sufficient to raise the appearance of bias and warrant remanding the case for a new hearing.[10] Because the district court's determination that Keith's due process rights were not violated is a conclusion of law, *see Podio v. INS*, 153 F.3d 506, 509 (7th Cir. 1998), our review of Keith's claim is *de novo. See id. See also Aguilar-Solis v. INS*, 168 F.3d 565, 568 (1st Cir. 1999) ("We review the question of whether an administrative law judge's conduct [during a hearing] violates a party's due process rights *de novo*.") (citations omitted).

---

[9] (...continued)

substituted for purposes of this appeal on December 7, 2005. For ease of reference, however, we continue to refer to Keith as the plaintiff-appellant throughout this opinion.

[10] Keith points out only one comment by the ALJ as being biased. The following is a colloquy between Keith's attorney and the ALJ.

> Atty:   . . . And the issue before this court is whether or not the Claimant was disabled prior to or on September 30, 1982, the last date he was insured for benefits . . . . [Y]ou know my objection. I made it part of the record. I felt it necessary to make that objection part of the record. That's certainly says nothing about the court.

> ALJ:   Counsel, your client should be, you know, satisfied. You raised it. This is the third occasion now that you've raised it before me alone. So I think that he can't expect you to do much more than that.

"A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison,* 349 U.S. 133, 136 (1955). *See also Schweiker v. McClure*, 456 U.S. 188, 195 (1982) ("due process demands impartiality on the part of those who function in judicial or quasi-judicial capacities" (citing *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242-43, and n.2, (1980))). So fundamental is this principle to the American legal system, *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 98 (3d Cir. 1992), that our nation's courts have repeatedly emphasized the necessity that a decisionmaker take care to avoid even the appearance of bias, *Commonwealth Coatings Corp. v. Cont'l Casualty Co.*, 393 U.S. 145, 150 (1968). *See also In re Murchison*, 349 U.S. at 133 ("justice must satisfy the appearance of justice") (quoting *Offutt v. United States*, 348 U.S. 11, 14 (1954)).

"Our standard in determining whether an ALJ's display of bias or hostility requires setting aside his findings and conclusions and remanding the case for hearing before a new ALJ is an exacting one. . . ." *NLRB v. Webb Ford, Inc.*, 689 F.2d 733 (7th Cir. 1982) (citing *A.O. Smith Corp. v. NLRB*, 343 F.2d 103, 110 (7th Cir. 1965); *Tele-Trip Co. v. NLRB*, 340 F.2d 575, 581 (4th Cir. 1965)). When reviewing the evidence, we begin with the presumption that the hearing officer is unbiased. *Schweiker*, 456 U.S. at 195 (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975); *United States v. Morgan*, 313 U.S. 409, 421 (1941)). This court has rejected allegations that due process is violated when isolated parts of an ALJ's conduct were challenged but the record as a whole demonstrated fundamental fairness in the litigant. *See Bayliss v. Barnhart*, 427 F.3d 1211 (7th Cir. 2005). It is only after a petitioner has demonstrated that the decisionmaker "displayed deep-seated and unequivocal antagonism that would render fair judgment impossible" that the presumption is rebutted, the findings set aside, and the matter remanded for a

new hearing. *Liteky v. United States*, 510 U.S. 540, 556 (1994).


A.  The ALJ's Refusal to Preclude Dr. Hutson from Testifying as a Medical Expert

Keith contends that the selection of Dr. Hutson as an expert as well as the ALJ's subsequent denial of his requests that another expert be appointed, demonstrate bias. We quickly dispatch Keith's argument that the initial selection of Dr. Hutson establishes bias, before turning our discussion to the implications of the ALJ's rulings denying Keith's requests.

The Code of Federal Regulations expressly permits an ALJ to employ a medical expert to review the evidence and render an opinion as to the nature and severity of a claimant's impairments and whether those impairments meet or equal any Listings when making a disability determination. 20 C.F.R. § 404.1527. *See also Social Security Ruling* 86-8 (PPS-123: The Sequential Evaluation Process) *and SSA Hearings, Appeals and Litigation Law Manual* § I-2-5-34(A), When to Obtain ME Opinion, *available at* http://www.ssa.gov/OP_Home/hallex/I-02/ I-2-5-34.html (last visited Dec. 15, 2006). Rather than simply permitting an ALJ to select the medical expert of his choice, Social Security Administration procedures dictate that medical experts of like specialties be selected on a rotating basis from a roster maintained by each of the Administration's Regional Offices. *See SSA Hearing, Appeals and Litigation Law Manual* § I-2-5-36(D), Selecting a Medical Expert, *available at* http://www.ssa.gov/ OP_Home/hallex/I-02/I-2-5-36.html (last visited Dec. 15, 2006). We have found no evidence in the record, and Keith does not point to any, that suggests that the ALJ failed to follow the Social Security Administration's

established procedures in the case before us.[11] Absent such evidence, we fail to see how Dr. Hutson's selection raises even the appearance of bias.

Keith next contends that excluding Dr. Hutson from testifying would have been proper, and that the ALJ's refusal to do so and appoint a new expert is indicative of bias. When seeking to establish judicial bias in this manner, however, Keith bears a heavy burden. *See Marozsan v. United States*, 90 F.3d 1284, 1290 (7th Cir. 1996). For our precedent is clear: "[b]ias cannot be inferred from a mere pattern of rulings by a judicial officer, but requires evidence that the officer had it in for the party for reasons unrelated to the officer's view of the law . . . ." *McLaughlin v. Union Oil Co.*, 869 F.2d 1039, 1047 (7th Cir. 1989) (citations omitted). *See also Marozsan v. United States*, 90 F.3d at 1290 ("judicial rulings alone *almost never* constitute valid basis for a bias or partiality motion") (emphasis added).

In each of his two pre-hearing written objections to Dr. Hutson's selection, Keith requested the assignment of a new medical expert because, according to Keith, we had expressed concern over "[Dr. Hutson's] testimony, attitude toward [him,] and general demeanor" in our prior order remanding his case. *See Keith v. Massanari*, 17 Fed. Appx. 478 (7th Cir. 2001) (unpublished order). In response, the ALJ noted that "[he] ha[d] reviewed the Judgment of

---

[11] To the contrary, the only evidence in the record on this issue—the ALJ's written response to Keith's initial request that another expert be selected, wherein the ALJ explains that "Medical [experts] are selected randomly based on their specialty and availability"—suggests that the Social Security Administration's established procedures were followed and that Dr. Hutson's selection was the product of chance rather than bias.

the Seventh Circuit referenced by the claimant . . . and [found] no support for the claim the Court was concerned with Dr. Hutson's attitude or general demeanor." Moreover, he noted that Keith neglected to offer any additional facts supporting the allegation that Dr. Hutson was prejudiced against him and unable to provide fair and accurate testimony. In light of Keith's failure to produce any credible evidence in support of his allegations, we refuse to find the ALJ's denial of his request demonstrative of bias.

### B. The ALJ's Conduct During the Administrative Hearing

In further support of his due process claim, Keith cites to three excerpts from the transcript of the administrative hearing. Specifically, he points to two statements made by the ALJ and a verbal exchange between the ALJ and appellant's counsel. The two statements (*see supra* p. 8) were made following counsel's objection to Dr. Hutson's participation in the hearing, an objection that was raised, considered, and overruled, twice prior to the hearing. The verbal exchange between the ALJ and counsel (which Keith contends was meant solely to disrupt the presentation of his evidence) occurred after counsel attempted to solicit testimony from Keith regarding potential courses of future medical treatment for his impairments and consists of the following statements:

ALJ:     Counsel, is this really necessary? Are we really talking about 1982 and prior to that?

Counsel: Well, I think his condition is a continuation of—

ALJ:     Well, he's presenting [sic] receiving SSI and I certainly don't intend to disturb that.

Counsel: Okay.

ALJ:      So why don't we just go with 1982 and for-
          ward. . . .

A review of the hearing transcript makes clear that
the ALJ's actions fall far short of the extreme conduct
necessary to sustain a claim of bias. *See Liteky*, 510 U.S.
at 546 (requiring that evidence be presented that demon-
strates "deep-seated and unequivocal antagonism that
would render fair judgment impossible"). The ALJ's
statements to counsel—rather than evidence of the
requisite hostility or antagonism necessary to sustain an
allegation of bias—are more aptly characterized as an
attempt to dissuade counsel from continuing to argue
the issue of Dr. Hutson's testimony and instead focus
his remarks on the merits of the case. After all, the ALJ
had considered and ruled upon the objection on two prior
occasions. The exchange between the ALJ and counsel is
of a similar vein: the ALJ was simply attempting to
focus the hearing on the precise issue at hand—whether
Keith was disabled at any time prior to his loss of insured
status. Routine efforts at courtroom administration, such
as these—even if they reflect impatience—cannot sustain
a claim of bias. *Cf. Liteky*, 510 U.S. at 555-56 ("*Not*
establishing bias or partiality, however, are expressions of
impatience, dissatisfaction, annoyance, and even anger,
that are within the bounds of what imperfect men and
women, even after having been confirmed as federal
judges, sometimes display. A judge's ordinary efforts at
courtroom administration—even a stern and short-tem-
pered judge's ordinary efforts at courtroom admin-
istration—remain immune.") *and Ivezaj v. INS*, 84 F.3d
215, 220 (6th Cir. 1996) (finding that the judge's actions,
while abrupt, constituted attempts to "control the pace of
the hearings, and to focus the hearings on relevant mat-
ters," and failed to establish a violation of due process)
*with United States v. Donato*, 99 F.3d 426, 434-39 (D.C.

Cir. 1996) (finding that judge's intense hostility toward the defendant and defense counsel raised a serious question of bias).

### III. Conclusion

Upon review of the entire record, we are convinced that Keith received all the process that was due him in his administrative hearing. Accordingly, the decision of the district court is AFFIRMED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*