In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-3399

SUSAN R. SPICHER,

*Plaintiff-Appellant,*

*v.*

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:16-cv-00371 — **William C. Lee**, *Judge.*

ARGUED APRIL 10, 2018 — DECIDED AUGUST 3, 2018

Before WOOD, *Chief Judge*, and FLAUM and KANNE, *Circuit Judges*.

KANNE, *Circuit Judge*. Susan Spicher suffers from a series of chronic health problems, including osteoarthritis, degenerative disc disease, chronic obstructive pulmonary disease, fibromyalgia, and morbid obesity. In 2010, Spicher applied for Social Security Disability Insurance Benefits and Supple-

mental Security Income dating back to 2003. An ALJ concluded that Spicher had not become disabled until September 20, 2012. The district court affirmed the ALJ's decision. Because the ALJ's conclusion was not supported by substantial evidence, we now reverse and remand.

## I. BACKGROUND

This is the second time Spicher's case is up for judicial review. After a 2012 hearing, an ALJ found that Spicher was not disabled from August 1, 2003 to May 30, 2012. But the district court remanded the case because the ALJ had not properly considered the limitations imposed by Spicher's obesity, both independently and in combination with her other impediments. *Spicher v. Colvin*, No. 1:13-CV-304-TLS, 2015 WL 4714293 (N.D. Ind. Aug. 7, 2015).

After the remand, the ALJ held another hearing on May 25, 2016. There, Spicher narrowed her case, focusing on whether she had been disabled since December 31, 2008, when her insured status expired. In response to the district court's instructions to reconsider Spicher's obesity, the ALJ consulted a second doctor who essentially adopted the findings of the medical reports already in the record. At the conclusion of the hearing, the ALJ remarked that her further consideration of Spicher's obesity had not motivated her to change her findings.

The ALJ ultimately issued an opinion that again concluded that Spicher had not been disabled until September 20, 2012. Her decision rested on her finding that Spicher could hold a sedentary position and perform three jobs identified by a vocational expert. In addition, the ALJ found that Spicher could occasionally crouch, crawl, balance, stoop, and kneel.

Spicher appealed that decision to the district court. After the district court affirmed the ALJ's decision, Spicher appealed to this court.

## II. ANALYSIS

On appeal, Spicher raises two issues. First, she argues that the ALJ violated her due process rights by prejudging the outcome of her case. Second, she contends that the ALJ improperly concluded that she was not disabled. We address each argument in turn.

*A. The ALJ did not violate Spicher's due process rights on remand.*

Applicants for disability benefits have the right to a hearing before a fair decisionmaker. *Keith v. Barnhart*, 473 F.3d 782, 787–88 (7th Cir. 2007). We review whether alleged due process violations merit a new hearing *de novo*, *id.* at 787, and will remand for a new hearing only if the "decisionmaker 'displayed deep-seated and unequivocal antagonism that would render fair judgment impossible.'" *Id*. at 788 (quoting *Liteky v. United States*, 510 U.S. 540, 556 (1994)).

Spicher directs the court to two points in the hearing that she argues show the ALJ's bias against her. The first came as the ALJ began the proceedings on remand:

> Oh, and I think I probably forgot to introduce myself on the record … I'm not bound by any of the prior decisions that have been made in this case. Although, of course, we're here because [sic] Federal Court didn't agree with that [sic] I did the last time. However, I will stick with what I determined the last time. That you were limited to sedentary work. Which meant that as of your age, September 20th,

> 2012, as of age 50, you were disabled under the rules.
> Now, I never determined when you were sedentary
> work. [sic] So, that—so any other description of
> what's reason able [sic] from the medical record we
> will work out with [the medical expert.].

(R. 9 at 866–867.) The second came near the end of the pro-
ceeding. As the ALJ explained the result she would likely
reach, she asked Spicher's counsel if he wished to amend the
request "so the decision [would] be fully favorable." (*Id.* at
875.) After Spicher's counsel declined, the ALJ asked, "Oh,
you want to go to Federal Court again?" (*Id.*)

These statements are troublesome, but they fall short of
the high bar required for a new hearing. The ALJ's first state-
ment that "[she would] stick with what [she] determined last
time" seems to refer to the ALJ's following sentence in which
she added "[t]hat you were limited to sedentary work." *Id.* at
866. In other words, at the outset of the hearing, the ALJ es-
tablished that she would not consider any elevated classifica-
tion that required mobility. This interpretation is borne out by
the fact that the ALJ specifically noted that she wanted to
"work out" if the medical evidence supported further limita-
tions. Rather than demonstrate the ALJ's bias against Spicher,
these statements suggest some willingness on the part of the
ALJ to reevaluate her prior decision.

As to the second exchange, we agree with Spicher that the
ALJ's question "Oh, you want to go to Federal Court again?"
reveals the ALJ's frustration with Spicher's case. But here too,

the ALJ's statements fall short of the "deep-seated and une-quivocal antagonism" required to justify a remand. *Keith*, 473 F.3d at 788.[1]

*B. Substantial evidence does not support the ALJ's conclusion that Spicher was not disabled.*

ALJs apply a five-step test to determine if a claimant suffers from a disability. 20 C.F.R. § 404.1520(a)(4); *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). Spicher's appeal focuses on the fourth and fifth of those steps: the calculation of the claimant's residual functional capacity and whether the ALJ has established that the claimant can perform work in the national economy.

In order to find that Spicher could perform work in the national economy, the ALJ first analyzed Spicher's residual functional capacity. The ALJ found that Spicher could perform sedentary work with the following limitations:

> [S]he can lift ten pounds occasionally and frequently; can stand and walk for at least two hours in an eight-hour workday, and requires a hand-held assistive device to walk for even short distances, but the contralateral upper extremity can be used to lift and carry; can sit for about six hours in an eight-hour workday; is limited in the use of her lower extremities, and cannot work with foot controls; can never climb ladders, ropes, or scaffolds; can only occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; must avoid concentrated expo-

---

[1] Spicher also contends that an ALJ violates agency rules and due process by sharing her preliminary assessments before publishing a written report. This argument is without merit.

> sure to extreme cold and heat, wetness, and humid-
> ity; and, must avoid even moderate exposure to
> fumes, odors, dusts, gases, poor ventilation, etc., and
> to hazards such as slick, uneven surfaces and unpro-
> tected heights.

(R. 9 at 845.) The ALJ later consulted with a vocational expert
who testified that a claimant of Spicher's age, education, work
experience, and residual functional capacity could perform
three jobs: charge account clerk, call out operator, and tele-
phone order clerk. Based on that testimony, the ALJ con-
cluded that Spicher could perform work that existed in signif-
icant numbers in the national economy and therefore was not
disabled prior to September 2012.

We review the ALJ's decision to deny disability status un-
der the substantial evidence standard. *Zurawski*, 245 F.3d at
887. To satisfy this standard, the ALJ "must 'build an accurate
and logical bridge from the evidence to her conclusion.'"
*Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (quoting
*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001)). More-
over, an ALJ may not ignore evidence that undercuts her con-
clusion. *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014).

Spicher insists that the ALJ's decision does not meet the
substantial evidence standard. Her arguments fall in two
broad categories. First, Spicher contends that the ALJ did not
address contradictory medical evidence when determining
the types of sedentary jobs that Spicher could hold. Second,
Spicher argues that the ALJ failed to consider the interaction
between her obesity and her non-severe impairments. In both
instances, we agree.

*1. The ALJ did not explain why she dismissed medical evidence that undercut her conclusion.*

The ALJ is not required to adopt the recommendations of an examining physician. But when a physician provides significant evidence that cuts against the conclusion reached by the ALJ, the ALJ must provide enough analysis to allow a reviewing court some idea of why she rejected it. *Clifford v. Apfel*, 227 F.3d 863, 873–74 (7th Cir. 2000) (citing *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996)).

In this case, Dr. Crystal Strong served as a consultative examiner. After visiting with Spicher in September 2010, Dr. Strong produced a report that the ALJ reviewed when deciding Spicher's disability claim. This report undercut the ALJ's residual-functional-capacity finding in two respects, and the ALJ did not address either.

*a. The ALJ failed to adequately address Dr. Strong's recommendation that Spicher regularly ambulate.*

Dr. Strong's report could have justified further limitations to Spicher's residual functional capacity. When addressing Spicher's obesity, Dr. Strong noted that:

> [Spicher] is severely overweight and the less that she ambulates, the worse this problem will get, so I recommended that she does not have a completely sedentary job. She reports that she can ambulate 20 minutes at a time, so I recommend that she can ambulate up to 20 minutes at a time as long as she is given adequate rest in between those 20 minute intervals in a work type setting.

(R. 9 at 747–48.) This limitation, however, was absent from the ALJ's residual-functional-capacity determination.[2]

This omission is curious. The ALJ was clearly aware of Dr. Strong's recommendation. In fact, she "accorded great weight" to Dr. Strong's findings and opinions. (R. 9 at 850.) She specifically noted that Dr. Strong had "advised against a 'completely sedentary job.'" (*Id*.) Nevertheless, the restrictions (or lack thereof) on sedentary work that the ALJ imposed suggest that she implicitly rejected at least one portion of Dr. Strong's recommendation. Because Dr. Strong's recommendation suggested further limitations, it contradicted the ALJ's finding on residual functional capacity. The ALJ was therefore required to provide enough analysis to allow a reviewing court to determine why she rejected it. Because the ALJ failed to do so, her decision to deny benefits cannot satisfy the substantial evidence standard.

> *b. The ALJ did not adequately address observations from Dr. Strong's report that suggested that Spicher was unable to perform certain postural activities.*

Dr. Strong's report also contradicted the ALJ's finding that Spicher could occasionally balance, stoop, kneel, crouch, and crawl. Recounting the exam, Dr. Strong observed that:

> It was very awkward and slow for [Spicher] to lie back on the table. She had to pick up her leg with her hands to both get it on and off the table. When I

---

[2] The agency suggests that the ALJ did not have to address this portion of Dr. Strong's opinion because it was a recommendation not a mandate. But we regularly require ALJs to consider the consequences of doctors' recommendations. *See*, *e.g.*, *Getch v. Astrue*, 539 F.3d 473, 482 (7th Cir. 2008).

> asked her to walk on her heels, she said "I cannot be-
> cause of the pain." She did try, but did a poor job of
> walking on her heels. She was able to walk on her
> toes and walk heel-to-toe with her cane and she
> squatted approximately one-fifth of the way down
> before she stopped secondary to pain issues as well.

(R. 9 at 747.)

These observations, of course, undercut the ALJ's finding that Spicher could balance, stoop, kneel, crouch, and crawl. Spicher's difficultly lowering herself onto a raised examining table suggests that she would struggle to lower herself to a crouching or crawling position. Her inability to squat at the exam suggests that she could not do so throughout a workday. Finally, Spicher's inability to walk on her heels casts doubt on the ALJ's finding that Spicher could regularly balance. The ALJ did nothing to address these concerns. That alone is a ground for remand. *Clifford*, 227 F.3d at 873–74.

On this point, we reject the agency's argument that these errors were harmless because—according to the *Dictionary of Occupational Titles* ("DOT")—the three jobs identified by the ALJ would not require Spicher to balance, stoop, kneel, crouch, or crawl. The DOT is "obsolete." *Herrmann v. Colvin*, 772 F.3d 1110, 1113 (7th Cir. 2014). Since it was last updated in 1991, it is certain that "many of the jobs have changed and some have disappeared." *Browning v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014). Thus, the ALJ's reference to the DOT gives this court little confidence that Spicher could perform the jobs the ALJ identified.

*2. The ALJ ignored the interaction between Spicher's obesity and her non-severe impairments.*

When assessing if a claimant is disabled, an ALJ must account for the combined effects of the claimant's impairments, including those that are not themselves severe enough to support a disability claim. 42 U.S.C. § 423(d)(2)(B). Here, the ALJ ignored the effects of at least two impairments.

First, the ALJ refused to consider the effects of a humerus fracture. The ALJ explained that she did not consider the injury because the most severe effects lasted less than one year. This was error. In fact, the ALJ was required to consider the permanent-but-mild effects of the humerus fracture in combination with the permanent-and-severe effects of Spicher's obesity. 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' … when we assess your residual functional capacity.").

Second, the ALJ entirely ignored evidence of carpal tunnel syndrome. Because Spicher raised the condition to the ALJ, (R. 9 at 52), and produced medical evidence to support the diagnosis, (R. 9 at 357), the ALJ was required to at least consider the assertion. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

### III. CONCLUSION

There is no doubt that the ALJ displayed some hostility towards Spicher, but this treatment falls far short of the bar we require to remand on the basis of due process. The substance of the ALJ's decision is another matter. While the ALJ

need not accept all of a doctor's recommendations and findings, she must—at minimum—build an accurate and logical bridge from the evidence to her conclusion. Doing so requires the ALJ to consider evidence that undercuts her conclusion. Because the ALJ failed to address such evidence in this case, we REVERSE and REMAND. On remand, the ALJ must address—but is not required to accept—Dr. Strong's recommendation that Spicher regularly ambulate. The ALJ must also address evidence in Dr. Strong's report that Spicher could not perform certain postural activities. Finally, the ALJ must account for the effects of Spicher's humerus fracture and carpal tunnel syndrome.