**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 3, 2019
Decided October 17, 2019

***Before***

DIANE P. WOOD, *Chief Judge*

AMY C. BARRETT, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 19-1523

| | |
|---|---|
| WILSON BURGOS,<br>    *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 1:17-cv-6167 |
| ANDREW M. SAUL,<br>Commissioner of Social Security,<br>    *Defendant-Appellee*. | Michael T. Mason,<br>*Magistrate Judge*. |

**O R D E R**

Wilson Burgos worked successfully for many years in warehouse jobs. Beginning in 2005, he underwent a series of surgeries to treat a kidney ailment and repair abdominal hernias. From there Burgos experienced worsening abdominal pain that limited his ability to work. He applied for disability benefits in 2014. An administrative law judge denied his application, concluding that Burgos could still perform light work with only a few limitations. The district court affirmed. We now vacate that judgment and remand for further proceedings. The ALJ erred by assigning too little weight to the opinions of Dr. James Boffa, the surgeon who performed Burgos's many hernia surgeries. Because the ALJ did not adequately account for Dr. Boffa's opinions, the denial of benefits was not supported by substantial evidence.

# I

## A

Burgos has a birth defect that partially blocks the flow of urine from his left kidney. The condition has required multiple surgeries, including a failed stent placement and a partial removal of his kidney in 2005. These surgeries resulted in Burgos being susceptible to hernias.

Burgos first developed a hernia in his left abdomen in 2006. Between 2006 and 2012, he had three surgeries to repair the hernia, at least two of which Dr. Boffa performed. Even after the surgeries, however, Burgos continued to experience abdominal pain. In February 2013, about a year after his final surgery, Dr. Boffa diagnosed Burgos with an incisional hernia—a hernia on scar tissue from a prior surgery. Five months later, Burgos experienced abdominal pain, which Dr. Boffa attributed to a condition known as eventration (the protrusion of abdominal contents through the abdominal wall) in the same location.

Up until this point, Burgos continued to work in a warehouse. But in September 2013, his employer moved out of town and laid him off. After the layoff, Burgos's condition worsened. He experienced more severe abdominal pain, and in August 2014, Dr. Boffa again noted eventration and prescribed medication. The pain worsened over time, and by April 2015, Dr. Boffa confirmed that Burgos's hernia had returned.

Burgos's kidney also began to deteriorate in 2015. A renal scan from March 2015 revealed decreased blood flow and function in his left kidney. Based on these results, Dr. Boffa referred Burgos to Dr. Michael Young, the urologist who performed the earlier kidney surgeries, to assess the need for a kidney removal. A follow-up scan showed additional kidney deterioration, and when Dr. Young examined Burgos, he discovered a new blockage. Although Dr. Young did not recommend a kidney removal, Burgos nonetheless required three surgeries in 2016 to clear the urine flow from his left kidney.

Following these surgeries, Burgos again experienced abdominal pain and again returned to Dr. Boffa. Dr. Boffa treated Burgos's hernia by prescribing an abdominal binder and telling Burgos to wear the binder at all times.

B

Burgos applied for disability insurance benefits in 2014. He alleged a disability onset date of September 13, 2013, the day that he lost his job at the warehouse. He alleged that he was unable to work primarily because of pain from his kidney and hernia.

An internist hired by the agency examined Burgos and found that he could walk 50 feet without support and had a normal range of motion in most muscle groups. But the agency's internist stopped short of giving an opinion on Burgos's functional limitations. Two other state agency consultants reviewed Burgos's medical records and, without examining him, opined that he could perform light work with only a few limitations.

In May 2015, Burgos submitted a statement from Dr. Boffa that outlined his opinions about Burgos's functional limitations. Dr. Boffa opined that because of "left abdominal wall strain [and] left kidney perfusion," Burgos could lift no more than five pounds, stand or walk no more than one hour in an eight-hour workday, and sit no more than two hours during a standard workday. He also opined that Burgos needed to elevate his legs for 30 minutes every two hours throughout the day.

At a hearing before the ALJ, Burgos's testimony largely tracked the limitations in Dr. Boffa's statement from May 2015. Burgos stated that he elevates his legs two or three times a day for 30 minutes at a time to relieve his hernia pain. He added that after 90 to 120 minutes of standing, he feels pain in his feet, hip, and side and needs to sit for 10 to 15 minutes. But sitting in the same position for extended periods, Burgos explained, leads to abdominal pain. He further noted that he adheres to Dr. Boffa's advice and wears an abdominal binder around the clock.

The ALJ also heard testimony from a vocational expert. The vocational expert explained that a person with a medical need to elevate his legs every two hours would be unable to find employment.

The ALJ concluded that Burgos's congenital kidney defect and hernias constituted severe impairments. In doing so, though, she assigned only "little weight" to Dr. Boffa's opinions, reasoning that he had a "limited treating relationship" with Burgos, failed to provide objective evidence for his opinions, and offered observations contradicted by other doctors and Burgos's daily activities. The ALJ also discounted

Burgos's account of his limitations, finding the described limitations inconsistent with the remainder of the record.

Relying instead on the opinions of the reviewing agency consultants, the ALJ concluded that Burgos could perform light work (for example, as a mail clerk) if allowed to wear the abdominal binder and to sit for five minutes every hour. She did not include an accommodation allowing Burgos to elevate his legs every two hours as part of her residual functional capacity determination.

In the end, the ALJ determined that Burgos was not disabled and denied him benefits. The district court affirmed, and Burgos now appeals.

**II**

A

We will uphold an ALJ's final decision if supported by "substantial evidence." See 42 U.S.C. § 405(g); *Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Our role is not to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] judgment for that of the Commissioner." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citations omitted).

B

Burgos contends that the ALJ erred by assigning little weight to Dr. Boffa's statement. For claims filed before March 27, 2017, like Burgos's here, a treating physician's opinion is entitled to controlling weight if well-supported by medical findings and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010). An ALJ must offer "good reasons" for declining to give controlling weight to the opinion of a treating physician. *Larson*, 615 F.3d at 749.

The ALJ failed to adhere to this standard. Although the ALJ gave several reasons for discounting Dr. Boffa's statement, none had substantial evidentiary support.

First, the record does not support the ALJ's finding that Dr. Boffa had a "limited treating relationship" with Burgos. To the contrary, Dr. Boffa had treated Burgos for

more than six years and performed multiple surgeries. The record shows that he examined Burgos on eight separate occasions between the final hernia repair in 2012 and rendering his opinion in May 2015. The ALJ did not explain why these regular visits were insufficient for Dr. Boffa to obtain "a longitudinal picture of [Burgos's] impairment." 20 C.F.R. § 404.1527(c)(2)(i).

Second, and again contrary to the record, the ALJ determined that Dr. Boffa failed to provide objective evidence for his opinions. Yet Dr. Boffa's treatment notes extensively document the causes of Burgos's abdominal pain. He diagnosed an incisional hernia a year after Burgos's last hernia repair and noted eventration in the same location less than two months before the alleged onset date of September 13, 2013. From that date forward, Dr. Boffa treated Burgos for recurring abdominal pain and prescribed medication. He continued to note eventration at the hernia repair site throughout 2014. And in 2015, he diagnosed Burgos with yet another hernia, noted decreased functioning in the left kidney, and ultimately referred Burgos for possible kidney removal.

The Commissioner takes issue with the manner and means through which Dr. Boffa conveyed his opinions. Dr. Boffa, the Commissioner insists, merely completed a pre-printed "checkbox form" and accompanied his findings with no narrative explanation. But "the mere absence of detailed treatment notes, without more, is 'insufficient grounds for disbelieving the evidence of a qualified professional.'" *Brown v. Colvin*, 845 F.3d 247, 253 (7th Cir. 2016) (quoting *Herrmann v. Colvin*, 772 F.3d 1110, 1111 (7th Cir. 2014)). Dr. Boffa's statement, no matter its format, reflects an expert medical opinion from the very surgeon who performed Burgos's hernia repairs. And the basis for his opinions is far from unknown: he treated Burgos for years and the administrative record contains his treatment notes. Given the evidence that Dr. Boffa treated Burgos for a recurring, severely painful hernia that worsened after the alleged onset date, the ALJ needed to explain why Burgos's worsening hernia and kidney condition did not provide an objective basis for Dr. Boffa's opinions. See *Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018) ("[A]n ALJ may not ignore evidence that undercuts her conclusion.").

The ALJ also erred by finding that Dr. Boffa's statement was inconsistent with Burgos's reported daily activities. The ALJ pointed to Burgos's ability to drive a car, socialize, go to the grocery store, and perform household tasks like cleaning tables, sweeping, and folding laundry. Nowhere, however, did the ALJ explain why Burgos would be unable to perform these activities if he had the limitations Dr. Boffa proposed.

The amount of time Burgos spends on chores (less than half an hour per week) and going to the grocery (once per week) is consistent with Dr. Boffa's opinions. More generally, we have repeatedly underscored the necessity of the ALJ articulating why a claimant's daily activities undermine a physician's opinion and to avoid inferring an ability to do full-time work from a claimant's occasional activities. See, e.g., *Vanprooyen v. Berryhill*, 864 F.3d 567, 571 (7th Cir. 2017); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

Finally, the ALJ noted what she saw as inconsistencies between Dr. Boffa's opinions and the findings of Burgos's other treating physicians. But the ALJ failed to account for each doctor's specialty, as required by 20 C.F.R. § 404.1527(c)(5). And whereas Dr. Boffa provided specific opinions about Burgos's physical limitations, the other treating physicians recorded only general observations about Burgos's condition.

A couple examples illustrate the point. The ALJ highlighted the "unremarkable musculoskeletal and neurological findings" of Burgos's primary care provider. This observation, however, comes from a preliminary finding the primary care provider made while evaluating Burgos for diabetes, anxiety, and foot pain. That doctor neither evaluated Burgos's physical abilities with any specificity, nor assessed Burgos for ailments related to his hernia or kidney—the ailments that formed the basis for Dr. Boffa's opinions.

The ALJ likewise noted how other doctors were able to treat Burgos successfully with physical therapy and cortisone shots. Those were treatments for arthritis, however, and have nothing to do with Burgos's kidney or hernia. Similarly, the ALJ noted how Dr. Young recorded consistent renal functioning for ten years following Burgos's 2005 kidney operation. Dr. Young did not say anything, though, about how the pain from Burgos's kidney disorder affected his abilities or aggravated the pain from his hernia. His findings are not inconsistent with Dr. Boffa's opinions.

All of these shortcomings lead us to conclude that the ALJ's denial of benefits was not supported by substantial evidence. Dr. Boffa opined that Burgos needed to elevate his legs every two hours because of his abdominal pain, a limitation that the vocational expert testified would preclude full-time work. He also opined that Burgos could lift no more than five pounds, a limitation that conflicts with the agency's definition of light work. See 20 C.F.R. § 404.1567(b) (stating that light work requires employee to lift up to 20 pounds, with frequent lifting of objects weighing ten pounds). And because Burgos is older than 50 and has only unskilled work experience, he would

be disabled under the agency's guidelines if limited to sedentary work. See 20 C.F.R. Part 404, Subpart P, App. 2 § 201.12. The ALJ failed to adequately account for these findings by Burgos's treating physician.

For these reasons, we VACATE the judgment and REMAND to the agency for further proceedings.